IN THE MATTER OF THE TRUST ESTATE OF MURRAY AND HAZLEHURST.—REGISTER AND WEBB *vs.* COMPTON SPENCER.

EVIDENCE: USAGE: MEANING OF THE TERM BORROWED MONEY: ADMISSIBILITY OF PAROL EVIDENCE TO AID IN THE CONSTRUCTION OF DEEDS.—A deed of composition with creditors contained a provision for the payment of "all borrowed money and accommodation notes, and then all notes which were originally given in the course of business, and have been extended by the holders thereof," &c. On exceptions taken to the claim of a creditor allowed as if *borrowed money*, upon the ground that it was not "borrowed money" within the terms of this deed, HELD:

1st. That the words "all borrowed money," include, in ordinary popular sense, all sums of money loaned by a creditor to a debtor, without regard to the mode, or the existence of any security or evidence of indebtedness. And there being nothing in the context to limit the meaning of the words, it was incumbent on the exceptant to establish by clear satisfactory proof, that the terms used have acquired and were used in a technical or peculiar sense.

2nd. An usage to be admissible must be known to the parties, or be so general and well established that knowledge and adoption of it may be presumed, and it must be certain and uniform.

3rd. These principles apply as well to the admission of parol proof by the Court in aid of the interpretation of a deed, as to the admission of such proof when offered to establish the meaning of a contract, to be submitted under the directions of the Court to a Jury.

4th. Where a debtor executes a deed of composition with his creditors, the discussions among the creditors, and their impressions about the claim of one of the creditors, before accepting the deed, and afterwards cannot be allowed to control its interpretation and construction, in the absence of all charges of fraud in procuring the composition.

APPEAL from the Circuit Court of Baltimore City.

The facts of this case are sufficiently stated in the opinion of the Court.

This cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and WEISEL, J.

*Geo. Wm. Brown* and *F. W. Brune,* for the appellants, argued:

1st. That the evidence of these witnesses, with the other proof in the record, was competent testimony to

show that the words, "borrowed money," had a technical and peculiar meaning amongst the merchants and business men of Baltimore, and were used in this technical and peculiar sense by the grantors in this deed, and that such evidence does not contradict or vary the deed, but only explains this phrase contained in it.

2nd. That such evidence may as well be applied to explain a term in this deed, as in any mercantile contract.

3rd. That from the face of the deed, aided by the proof, it is sufficiently apparent that the loans of the appellee, constituting his claim for $10,000 and interest, should not be embraced under the term borrowed money, and preferred in the creditor's account. The appellants refer to the following authorities : *Powell on the Law of Evidence*, 345, 351. (96 *Law Lib.*, 222, *et seq.*) *Shaw vs. Wilson*, 9 *Clarke & Finelly*, 525, 528, 555, 566. *Wigglesworth vs. Dallison*, 1 *Smith, Le. Ca.*, 305. (43 *Law Lib.* 410.) *Dorsey vs. Eagle*, 7 *G. & J.*, 331. *Williams vs. Woods*, 16 *Md. Rep.*, 251. *Brooms' Legal Maxims*, 294. (50 *Law Lib.*, 192.)

*George H. Williams*, for the appellee, contended :

1st. That a deed is a common law instrument, and is to be interpreted according to the received meaning of words, and that no attempt can be permitted to graft an ambiguity upon, and distort the meaning of simple English as understood by the whole world, when used in such an instrument or elsewhere.

2nd. That the deed of a merchant is not to be interpreted differently from that of any other grantor ; and that to make the occupations in life of grantors a key to the meaning of words, and to give them a narrow and restricted meaning, especially when free from ambiguity, is a novelty hitherto unheard of.

3rd. That a custom and usage of merchants so to use

the words "borrowed money," in their deeds, even could such a thing be proved, cannot be made to apply to the deeds of machinists; and so to construe deeds would unsettle grants to a frightful extent; and in searching titles parties would have to go outside of deeds and find out the business occupations of grantors, and then also inquire whether any such occupations had established a custom and usage to distort or narrow the meaning of plain, simple, unambiguous English. *Williams vs. Woods, et al.*, 16 *Md. Rep.*, 251. *Foley et al., vs. Mason*, 6 *Md. Rep.*, 49.

Bowie, C. J., delivered the opinion of this Court.

This appeal involves the true construction of a deed of composition with creditors, made by Murray & Hazlehurst to Messrs. Abbott, Keyser and Rogers, on the 18th of February, 1861. After collecting all outstanding debts, and selling and disposing of the property conveyed to them, the trustees are required to apply the proceeds among certain classes of creditors as follows, viz:

1st. To discharge the interest due on all mortgages, together with the ground rent, taxes and insurances accruing or incurred while the property was in the possession of the trustees.

2nd. To pay wages or hire of all agents or workmen due and accruing during the continuance of the trust.

3rd. To pay out of the surplus "all borrowed money and accommodation notes," and then all notes which were originally given in the course of business and have been extended by the holders thereof, etc.

4th. To pay individual creditors of partners out of their individual estates.

5th. To pay to such creditors as shall within sixty days signify their assent and execute a release.

The appellee filed his claim under this deed in the form

of an open account against Messrs. Murray & Hazlehurst, debiting them as follows:

1857, March 2nd.  To this amount of money
     borrowed of me by them........................ $10,000
Interest until paid............................................
1859, Nov. 19th.  This amount of money bor-
     rowed of me by them............................ 351
Interest until paid............................................

To which is annexed the affidavit of the creditor and one of his debtors, " that the account is just and true."

This claim was allowed in account C as a claim for borrowed money entitled to preference as such, under the third class of crediting.  To which the appellants excepted, contending that said claim should be classified with the general creditors of Murray & Hazlehurst.  This is purely a question of interpretation and construction. " The terms of every written instrument are to be understood in their plain, ordinary and popular sense, unless they have acquired, by known usage, a peculiar sense, or unless the context points out that in the particular instance, in order to effectuate the immediate intention of the parties, it should be understood in some other and peculiar sense." 1 *Greenlf. Ev.*, sec. 278.  In Broom's Legal Maxims, upon the authority of a very eminent Judge, it is said: "The true interpretation of every instrument, being manifestly that which will make the instrument speak the intention of the party at the time it was made, it has been always considered an exception from, or perhaps to speak more correctly, not so much an exception from as a corollary to the general rule above stated, that where any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence, *dehors* the instrument itself,

for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party." TINDAL, *C. J.*, 5 *Scott N. R.*, 1037, 1038.

The question then recurs, is there any doubt about the true sense of the words of the third clause.

The words, "all borrowed money," would seem at first view incapable of misconstruction. They include in ordinary, popular sense all sums of money loaned by a creditor to a debtor without regard to the mode or the existence of any security or evidence of indebtedness. If there had been money borrowed, secured by mortgage, bond, bill or note, or without any such security, the comprehensive monosyllable *all* would embrace it, unless there is in the deed some qualifying clause. We look in vain to the context for such a limitation. It is then incumbent upon the exceptant to establish by clear, satisfactory proof that the terms used have acquired and were used in a technical or peculiar sense. Without excluding the evidence of usage to explain words of equivocal import in mercantile and other instruments, the decided tendency of the most eminent Judges is to restrain rather than encourage it. Justice STORY, in 2 *Sumner*, 567, deprecates the practice, and says: "I rejoice to find that of late years the Courts of law, both in England and America, have been disposed to narrow the limits of the operation of such usages and custom and to dicountenance any further extension of them." This Court, in the case of *Foley & Woodside vs. Mason, etc.*, 6 *Md. Rep.*, 50, quote the energetic language of C. J. TILGHMAN, in which he says: "Miserable will be our condition if our property is to depend, not on the contract of the parties, expounded by established principles of law, but what is called the custom of particular places, so that we may have different laws in every town and village." And they decide an "usage to be admis-

sible, must be known to the parties or be so general and well established that knowledge and adoption of it may be presumed ; and it must be certain and uniform.''

These principles apply as well to the admission of parol proof, by the Court, in aid of the interpretation of a deed, as to the admission of such proof, when offered to establish the meaning of a contract, to be submitted under the direction of the Court to a jury. In this case the meaning of the term or phrase '' borrowed money,'' as sought to be established by the usage among merchants in Baltimore, is not shown to be so certain and uniform as to be capable of practical application. The testimony is inconsistent and contradictory. In one place ''borrowed money'' is defined as money loaned on call for which ''no charge is made.'' In another, ''if a person ask me to take money on interest for fifteen or twenty days it would be borrowed money.'' In another, '' if money is loaned for twelve months on interest it is not a debt of honor, nor if loaned for an indefinite time.'' Again, ''if a party lends me money for my accommodation, trusting to my honor, for an indefinite time, I consider it a debt of honor.''

These definitions of ''borrowed money'' have no fixed invariable quality by which to establish the peculiar meaning of the words. Sometimes it is, the loan being on call, ''without interest;'' then it may be with interest for fifteen or twenty days if offered by the lender; if loaned for twelve months on interest, or an indefinite time, it is not in their sense borrowed money according to the usage of merchants. A standard so variable is incapable of application and cannot control the well understood meaning of words. But if such testimony were admissible for the purpose, there is nothing to show the appellees' claim was not borrowed money in their sense. One of the debtors says the appellee loaned

the firm $10,000, he could not then give the details. Sometimes they were in the form of notes, which were afterwards canceled; "the matter extended over three or four years;" the lender was the clerk of the firm, had expectations of being taken into the co-partnership; after that was abandoned it was proposed to give him a mortgage, which he relinquished in favor of another party so that his debtors might raise more money.

Could any circumstances constitute a debt of honor if these fail? With most unbounded disinterestedness he placed his whole claim upon the word of his debtors, declining all security and preferences.

There is some discrepancy in the evidence as to the mode in which the debt was contracted and the inducements to the loan, but this is not sufficient to countervail the concurrent testimony that the amount claimed was lent and advanced, which, according to the usual meaning of the words "borrowed money," brings the claim of the appellee within the third class of creditors. In either view, whether considered in its enlarged or more restricted sense, it was properly allowed.

The discussions among the creditors, and their impressions about the appellee's claim before accepting the deed, and afterwards, cannot be allowed to control its interpretation and construction in the absence of all charges of fraud in procuring the composition.

We think the order of the Court below, overruling the exceptions of the appellant, and ratifying account C, should be affirmed with costs to the appellee.

*Order affirmed.*

(Decided April 28th, 1866.)