WILLIAM HAMILTON *vs.* WILLIAM C. CONINE and ROBERT PURVIANCE, JR.

*Tenant in Common—Action of Assumpsit—Action of Account—Tenants in Common and Partners—Statute of 4th Anne, ch. 16, sec. 27.*

One tenant in common cannot maintain an action of *assumpsit* against his co-tenants to recover for services rendered by him, as auctioneer and real estate broker, in making sale of the common property, and for money laid out and expended by him in advertising said property for sale.

An action of account by a tenant in common against his co-tenant, may be resorted to in this State, in cases to which it is applicable; but a bill in equity is generally regarded as the more convenient and effectual remedy.

In reference to the right to sue each other and the mode of doing so, tenants in common are like partners; the rules of law governing actions between the latter apply with equal force to the former. Amongst the exceptions to this rule, as to partners are cases where, on a final balance of all accounts, a particular sum is found due to one partner, which the other expressly promises to pay, or where the articles of partnership contain a covenant, for a breach of which an action of covenant is maintainable, if the articles be under seal, or of assumpsit if the partnership be created verbally or by writing only.

Statute of 4th Anne, ch. 16, sec 27, relating to actions of account by and against joint tenants and tenants in common, construed.

APPEAL from the Court of Common Pleas.

The facts of the case are sufficiently stated in the opinion of the Court.

*Exception:* The plaintiff offered the following prayers:

1. If the jury find from the evidence, that the plaintiff was employed to sell at public or private sale, a three-fourths' interest in the piece of property spoken of by the witness, then the plaintiff is entitled to recover any sum or sums of money that the jury may find, he expended for said defendants at

their instance and request, and also the value of any services they may find he rendered to said defendants, provided, they find that said defendants employed said plaintiff to render said services, and that, they ratified and approved of said services, after they were rendered and performed by said plaintiff; and provided, they further find, that said plaintiff then was an auctioneer in the city of Baltimore, and also engaged in the business of selling at private sale in the said city, real estate on commission, and notwithstanding, they may find that said piece of property was then, and is now owned one-fourth by said plaintiff, and one-fourth by said Conine, one-fourth by said Purviance, and one-fourth by George Presstman, as tenants in common.

2. If the jury believe from the evidence, that the plaintiff was employed by the defendants to sell a three-fourths' interest in the piece of property spoken of by the witnesses, as situated on Frederick street in the city of Baltimore, and that the plaintiff did procure a purchaser therefor, and that said purchaser was satisfactory in every way to the defendants, and that said purchaser was willing to pay for said interest in said property the price asked therefor by the defendants, and that the defendants were willing, and did agree to sell said property to said purchaser, but subsequently, without any fault on the part of said purchaser or said plaintiff, they refused and failed to consummate and carry out, or to have consummated and carried out the sale of said property, but abandoned the same, then the plaintiff is entitled to recover whatever the jury may find to be the usual compensation for making a sale of property in the city of Baltimore, charged by parties engaged in the business of buying and selling real estate on commission, provided, they find that said plaintiff was at the time of his employment, (if they find it,) engaged in said business, and notwithstanding, they may further find, that said piece of property was then, and is now owned one-fourth by said plaintiff, one-fourth by said Purviance, one-fourth by said Conine, and one-fourth by George Presstman, as tenants in common

—which the Court refused to grant, but gave the following instructions:

1. If the jury believe from the evidence, that the plaintiff, and the defendants and the witness Presstman, were at the time when the alleged sale was made in the case, if they find such sale, and at the time, when the costs and expenses spoken of by the plaintiff, and claimed in his case, were incurred, if they find the same to have been incurred, tenants in common, or owners of the property alleged to have been sold by the plaintiff, and that there was no special agreement between the defendants and the plaintiff to pay the plaintiff for effecting said sale, and incurring said costs and expenses, that then the plaintiff is not entitled to recover.

2. That there is no evidence in this case of such special agreement, as would entitle the plaintiff to recover under the previous instruction.

To the refusal to grant the plaintiff's prayers, and to the instructions given by the Court, the plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., NELSON, MILLER and ALVEY, J.

*Benjamin F. Horwitz,* for the appellant, contended:

That ever since the Statute of 4th Anne, ch. 16, sec. 27, which gave the right to one tenant in common to sue his co-tenant, at law, in an action of account for the rents, issues, and profits of the property so owned, no well adjudged case can be found in which it has been held that a tenant in common of *realty* cannot sue his co-tenant, at law, without an express promise to pay, purely upon the ground of the existence of the tenancy in common. That statute having given a tenant in common the right to sue his co-tenant, at law, for an account of the rents, issues and profits, it certainly must be construed to give that right in the much less complicated case of an action for services rendered and money laid out and

expended in and about the property, at the special instance
and request of the defendant.   This being a remedial statute
it is to be liberally construed, "largely and beneficially, so as
to suppress the mischief and advance the remedy."   *Dwarris
on Statutes,* 734, 735, 9 *Law Lib.,* 67 ; *Sedgwick on Statutory
Law,* 359, 360, 361.   It is submitted, no reason can be given
why a resort must be had to equity in this case, which is not
covered by the statute.   If an action at law was thought to
be proper as far back as the year 1705, "for the better ad-
vancement of justice," that is, in order to avoid the great
expense and delay of a chancery proceeding, such action is
certainly free from all possible objection at this day ; for
it must be remembered that when the statute of Anne was
passed, no plea of "set off" was permitted at law, and the
parties to a suit at law were not witnesses.   The right of
"set off" was unknown to the common law.   It was given
in England by the Statutes 2 and 8, George II, and in this
State by the Act of 1785, ch. 46, sec. 7.   Parties were not
witnesses in their own suits at law in this State until 1864.
Consequently, a defendant is now deprived of no right or
privilege in an action at law in a case like this, which he
could have in an equity proceeding.   Why then resort to
equity ?

The common law action of account has fallen into disuse
in the United States.   The action of *assumpsit* is now resorted
to in its stead.   2 *Greenleaf on Evidence,* sec. 34 ; *Jones vs.
Hanaden,* 9 *Mass.,* 540 ; 1 *Burrill's Law Dictionary,* 17.   It
has, however, been frequently decided that a tenant in com-
mon may maintain *assumpsit* against his co-tenant *without* an
express promise.   *Borrell's Adm'r vs. Borrell,* 33 *Penn.,* 492 ;
*Gillis vs. McKinney,* 6 *Watts & Sergeant,* 78 ; *Miller vs. Mil-
ler,* 9 *Pickering,* 34 ; *Brigham vs. Eveleth,* 9 *Mass.,* 538 ; *Coles
vs. Coles,* 15 *Johnson,* 159 ; *Dickinson vs. Williams,* 11 *Cush-
ing,* 258 ; *Story on Partnership,* sec. 419.

Courts of Equity never entertain jurisdiction in matters
*purely* of account, except in cases where it is shown that there

are mutual conflicting accounts, which are too large and too complicated for a Court of law to do complete justice between the parties, and which require the aid of an auditor, or where it is shown that a discovery is required. 1 *Story Eq. Jurisp., secs.* 458 *and* 459; *Oliver vs. Palmer,* 11 *G. & J.,* 442, 443, 444; *Frietas vs. Don Santos,* 1 *Younge & Jervis,* 574; *King vs. Rosset,* 1 *Y. & J.,* 33; *Dinwiddie vs. Bailey,* 6 *Vesey, Jr.,* 136.

A tenancy-in-common of *real estate* has none of the ingredients which go to make up a partnership, and which often require a resort to equity. There is no communion of interest in losses or profits. Each tenant has a perfect right to sell his interest without the consent, and without regard to the wishes or interests of his co-tenant, (who is often a stranger to him,) at such price as he may think proper, and whatever sum he may make or lose in no way effects his co-tenants. Again one tenant has no lien on his co-tenant's interest, such as exists among partners, and by means of which the precise equities of joint and separate creditors can be worked out in a Court of Equity only. 1 *Story's Eq. Jurisp., sec.* 675. So in case of the death of a co-tenant of real estate, his interest, different from that of a partner, descends to his heirs at law. This shows that it is not necessary for tenants in common, like partners, to have at the death of a co-tenant an accounting; consequently, if in this case Hamilton died, his interest in the property would descend to his heirs at law, and his claim here sued for, vest in his personal representatives who could sue for it *at law.* Why should there be a different rule before and after death? Partners, even, can sue each other, at law, in *assumpsit* for the non-performance of an engagement. *Wadsworth vs. Manning,* 4 *Md. Rep.,* 70, 71. But no bill in equity could be filed in this case, because all the tenants in common must be parties to such a bill. 1 *Story Eq. Pleadings, sec.* 159. Presstman could not be made a party to a bill praying for the relief asked in this case. If he were made a party, the bill would be demurrable for multifariousness. *White et al. vs. White,* 5 *Gill,* 359; *Griffin & Lee vs.*

*Merrill,* 10 *Md. Rep.,* 364; *Wilson vs. Wilson et al.,* 23 *Md. Rep.,* 162. In those cases, where the books speak of partners and tenants in common as being in some respects governed by the same rules, they refer to tenants in common of *chattels personal,* who of course occupy a very different relationship towards each other, from tenants in common of *real estate.*

*Levin Gale,* for the appellees, argued:

That no contract with reference to services or expenditures or labor performed by one tenant in common, for the benefit of the property held by them mutually, can be implied. That there must be an express contract, otherwise one cannot recover against the other; and that in this instance there was no such express contract. *Brown on Actions at Law,* 132, (45 *L. L.,* 199;) *Cooper vs. Tonkie,* 9 *Ad. & E.,* (*N. S.,*) 936; *Garrel vs. Hanna,* 5 *H. & J.,* 412, *Causten vs. Burke,* 2 *H. & G.,* 295.

MILLER, J., delivered the opinion of this Court.

Hamilton, Conine, Purviance and Presstman were tenants in common of certain improved real estate in Baltimore city; each owning an undivided fourth part. This action of *assumpsit* was instituted by Hamilton, who was an auctioneer and real estate broker, against Conine and Purviance, two of his co-tenants, to recover expenses paid by him for advertising the property for sale, for his services as auctioneer, and for commissions on the amount of a private sale negotiated by him. The declaration contains the common counts, including those for work done by the plaintiff for the defendants at their request, for money paid by the plaintiff for the defendants at their request, and for money found due from the defendants to the plaintiff on accounts stated between them; the plea was not indebted as alleged. The proof upon which the plaintiff seeks to recover the costs of advertising and for his services as auctioneer is, that he advertised the property and put it up at auction *at the request* of the

Hamilton *vs*. Conine and Purviance.

defendants. The advertisement was of the whole property, and not of the undivided shares of the defendants. A part of the property was bid in at public sale by one Smith, but this sale was not completed because Presstman refused to be bound by it. A private sale of the whole for $8,000, was then negotiated by the plaintiff with one Myers, but this sale also proved ineffectual and was never completed because of the refusal of the parties interested, or some of them, to execute a deed, after the claim for commissions was made by the plaintiff, and the property, so far as the record shows, still remains unsold. The claim for commissions is put upon the ground that the sale to Myers was negotiated by the plaintiff, that the price and purchaser were satisfactory, and the latter was ready and willing to pay, and the sale was broken off, or failed to be consummated, through no fault of the purchaser or plaintiff. At the root of the case lies the question whether, in view of the relation of the parties and upon the facts proved, this action can be maintained? No Maryland authority has been, or can be, cited in its support; and it is admitted that at common law an action of *assumpsit* cannot be brought by one tenant in common against his co-tenant. By the Statute of 4th Anne, ch. 16, sec. 27, it was provided, that " actions of *account* shall and may be brought and maintained by one joint tenant and tenant in common, against the other as *bailiff*, for receiving more than comes to his just share or proportion." This form of action thus given by statute, as well as the common law action of account is, in practice, but seldom used, a bill in equity being in most cases the more convenient and effectual remedy; but the action of account may still be resorted to in this State, in cases to which it is applicable. *Gibbs vs. Clagett*, 2 *G. & J.*, 17; *Green vs. Johnson*, 3 *G. & J.*, 394. Here, as in England, common law and equity jurisdictions are carefully separated, and we have closely followed the English practice; we see no good reason why it should be departed from in this instance. In *Browne on Actions at Law*, 132, (45 *Law Lib.*, 99,) the rule is thus

v. 28

stated : " Joint tenants, tenants in common and co-parceners cannot, in general, maintain any action against each other *because they are in the nature of partners* ; " and in 1 *Chitty's Pl.*, 39, it is said : " At law òne *partner* or *tenant in common* cannot, in general, sue his co-partner or co-tenant, in any action, in form *ex-contractu*, but must proceed by action of *account* or by bill in equity." In reference to the right to sue each other and the mode of doing so, tenants in common are thus assimilated to partners ; the rules of law governing actions between the latter, apply with equal force to the former, and this analogy runs through all the decisions. Amongst the exceptions to the rule just stated are, as to partners, cases where, on a final balance of all accounts, a particular sum is found due to one partner which the other expressly promises to pay, or where the articles of partnership contain a covenant, for a breach of which an action of *covenant* is maintainable, if the articles be under seal, or of *assumpsit* if the partnership be created verbally or by writing only. Among the instances in which the rule has been enforced, is one specially applicable to the present case : A., an attorney, and B. and C. had been members of a trading company ; after the dissolution of the company, B. and C. were sued by its creditors, and they *retained* A. to defend the actions, and in the course of making that defence a bill of costs was incurred : it was held by all the Judges that A. being, as a member of the company, jointly liable to contribute to the expense of defending these actions, could not maintain an action at law against B. and C. for his bill of costs. 7 *Barn. & Cress.*, 419. " It is in general an answer to an action that a party is legally interested in both sides of the question." 1 *Chitty's Pl.*, 40. The rule that one partner cannot maintain an action against his co-partner for work and labor done on account of the partnership, was also stringently enforced in the case of *Causten vs. Burke*, 2 *H. & G.*, 295. The plaintiff in that case was associated with the defendant and others in a particular concern, not rendering it the duty

of any of them to leave their place of residence, and at a meeting of the association, when the plaintiff was not present, it was proposed to employ him to go to a distant place to look after the property of the concern; the plaintiff was then sent for, accepted the employment for a fixed compensation, performed the services required, and brought an action of *assumpsit* against one of the partners to recover the sum agreed to be paid him; this agreement was held to be an undertaking on account of the concern; that the same agreement entered into with a stranger would have been binding on the firm, and the plaintiff, as a member of that firm, must have contributed his proportionate part of the sum contracted to be paid, and, *therefore*, could not sustain his action. The case of *Kennedy vs. M'Fadon, et al.*, 3 *H. & J.*, 194, furnishes another illustration of the extent to which the Courts of this State have gone, in denying the right of one partner or joint owner to sue the other, at law, in an action of *assumpsit*. It is imposible to distinguish the present case, in principle, from those just cited. The services rendered by the plaintiff, for which he seeks to recover in this action, were done during the continuance of the tenancy in common, on account of the whole common property, and enured to the benefit of all the joint owners, and if performed by a stranger the suit would have been against the four jointly, and the plaintiff must have contributed his proportionate share towards paying for them. The same reason, therefore, holds against his right to maintain this action. It is difficult to find authorities precisely in point in the Courts of other States, probably for the reason that the well settled practice has been so generally followed, that such suits at law have rarely been attempted. *Sherman vs. Ballou*, 8 *Cow.*, 311, was a case where a guardian of two tenants in common received the rents belonging to the three, and it was held the third could not maintain *assumpsit* against the guardian for his share; "that such an action could not be sustained was," says Chief Justice SAVAGE, "the reason for providing by statute for the action of account." In the case

of *Beach vs. Hotchkiss*, 2 *Conn.*, 425, the plaintiff, the defendants and others, were joint owners in equal proportions of goods shipped to the West Indies, and by consent of all concerned the whole property was put into the hands of the defendants, who received the proceeds, stated the account, ascertained the amount due to each, and actually paid one of them his share, and yet the Court held the plaintiff could not maintain *assumpsit* to recover the sum due him; that between co-partners the action must be account, unless there has been a settlement between them and a balance struck, or an express promise to pay. In speaking of the action of account, HOSMER, J., says the difficulty attending it is not intrinsic but adventitious, resulting from the old mode of practice, that under the more simple practice prevailing in that State, it was neither more objectionable on the ground of expense or protracted litigation than any other action, and that "between partners and tenants in common it is, for the most part, the only suit in which justice can be administered." It may here be remarked in passing, that other eminent jurists besides Judge HOSMER, have doubted whether this form of action justly deserves all the odium into which it has fallen. In *Godfrey vs. Saunders*, 3 *Wils*, 94, a matter which had been fruitlessly pending in chancery upwards of twelve years, was thoroughly examined before auditors in this form of action, and finally determined in the course of two years, and Lord Chief Justice WILMOT, in delivering his judgment upon a point arising in the case, remarked he was "glad to see this action of account revived in this Court." In this State where suits are brought against administrators and executors, and the plea of *plene administravit* is interposed, the practice of most of our Courts is, to refer the cases to the auditors to state accounts of assets, yet this practice, with the attendant delay, has not deterred the profession here from bringing such actions, or made them less frequent.

On the part of the appellant the case of *Coles vs. Coles*, 15 *Johns.*, 159, has been relied on. There two tenants in com-

mon sold and conveyed their land and all the money was received by one, and it was held the other could maintain an action for money had and received for his moiety. But that case comes within the rule of the English decisions that the *sale* determines the joint interest. " If one sell the subject matter in which they are interested, money had and received lies by the other, because the sale determines the interest." *Browne on Actions at Law*, 132. Several decisions in Massachusetts have been pressed upon us by the appellant's counsel, and particularly the case of *Dickenson vs. Williams*, 11 *Cush.*, 258, where it was decided that one tenant in common may maintain *assumpsit* against his co-tenant for money expended by him in removing a joint incumbrance upon the estate, and for his share of the money actually received by the co-tenant from sales of the common property, though the tenancy in common still continued. As to these decisions it is to be observed that the Revised Statutes of Massachusetts, of 1836, ch. 118, sec. 43, abolished the action of account, and provided that " when the nature of an account was such, that it could not be conveniently and properly adjusted and settled in an action of *assumpsit*, it may be done upon a bill in equity." By this statute, as was said by Chief Justice SHAW, in *Munroe vs. Luke*, 1 *Met.*, 464, the matter was put beyond doubt in that State that *assumpsit* will lie in such cases. But besides this statutory provision, which destroys the force of those decisions as authorities, the case in 11 *Cush.*, announces doctrines in relation to suits between co-partners, which prevent its being followed as an authority here, without overruling decisions of our own Courts on the same subject. Our attention has also been called to the case of *Borrell vs. Borrell*, 33 *Penn. State Rep.*, 492, where it was also held that one tenant in common may maintain *assumpsit* against his co-tenant to recover a share of the profits upon proof that the whole was received by the defendant, and where Judge PORTER casts some pleasant ridicule upon the old action of account for its " cumbrous machinery and *want of speed*," and an-

nounces the Court's determination "to allow *common sense* another triumph by holding the action of *assumpsit* maintainable in such cases." To this may well be replied what was said, in an analogous case between partners, by Chief Justice TILGHMAN, in delivering the opinion of the Supreme Court of the same State in *Ozeas vs. Johnson*, 1 *Binn.*, 192:—"No case has been cited to show that an action like the present can be maintained, unless the partners have settled their account and struck a balance. It is of importance that the forms of actions should not be confounded. They are founded in *good sense* and convenience. The defendant has an *interest* in insisting that the proper form of action should be preserved, *of which this Court has no right to deprive him.*" We have had, and still have, in this State, statutes simplifying the forms of pleading and practice, but the substantial distinctions between different actions have never been disregarded by our Courts. Even the Act of 1856, ch. 112, which for a time remained unmodified, was construed by our predecessors as permitting the distinctive nature of actions still to remain, though abolishing old forms and adopting new ones; the substantial principles underlying our system of jurisprudence, and, to some extent, governing the forms of actions must still be recognized, however the form may be changed or simplified. *Stirling vs. Garritee*, 18 *Md. Rep.*, 468. Looking then to the uniform tenor of our decisions in reference to suits between joint-owners, joint-contractors, co-executors and administrators, and partners, to the fact that equity and common law jurisdictions are here separated, and to the entire absence of any trace in our Reports of adjudged cases of any instance in which such a suit has heretofore been attempted, as between tenants in common, we are not at liberty to sanction the innovation upon the settled practice of the State, which would be introduced by allowing the present action to be maintained. Nor can we assent to the position that the statute of 4th Anne, chap. 16, merely puts the action of account by way of example and not by way of limitation, and that by a liberal

construction of that statute, and because parties are now by our laws allowed to become witnesses in their own cases, all distinctions between the forms of actions, and the jurisdictions of our common law and equity tribunals should, in such cases as this, be abolished. It follows from what has been said, the Court below committed no error in refusing to grant the appellant's prayers, and we forbear expressing an opinion whether the law as stated in the second prayer would be correct in a case where no objection to the form of action existed. Having decided this action cannot be maintained, we also refrain from expressing any opinion as to the instructions granted by the Court, for the appellant has suffered no injury therefrom. The case is one in which the Court below would have been authorized to instruct the jury that upon the pleadings and proof, the plaintiff was not entitled to recover because of misconception of his remedy. The judgment being in favor of the defendants must be affirmed.

*Judgment affirmed.*

(Decided 15th May, 1868.)