28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
PATTERSON, BELKNAP, WEBB & TYLER, Plaintiff-Appellee,
v.
Dominick LAROSA; Larosa International Fuel Company,
Defendants-Appellants,
and
Catherine Larosa; Joseph Larosa; Karen Larosa, Defendants.
 No. 93-1388.
 United States Court of Appeals, Fourth Circuit.
 Argued May 12, 1994.
Decided July 1, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, Senior District Judge. (CA-91-2231-HAR)
 Samuel J. DeBlasis, II, Decaro, Doran, Siciliano, Gallagher, Sonntag & Deblasis, Lanham, Maryland, for Appellants.
 Patrick James Attridge, King & Attridge, Rockville, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER, WILKINSON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The question here is whether plaintiff law firm is entitled to recover the amount of the statements it rendered to defendants for legal services. We hold that defendants' failure to object to the amounts stated in the bills and continued acceptance of plaintiff's legal services for eighteen months constitute an implied agreement to pay the account stated. We therefore affirm the district court's grant of summary judgment to plaintiff law firm on its claim for account stated.
 
 I.
 
 2
 Defendants Dominick and Joseph LaRosa are majority shareholders and officers of defendant LaRosa International Fuel Company ("LaRosa Company"). In August 1986, James Stearns, an attorney with the law firm of Barnett and Alagia, began representing the defendants in tax matters before the IRS. Because the IRS had seized all of the defendants' assets, Stearns agreed that defendants would pay for his legal services when their assets were released.
 
 
 3
 In January 1989, Stearns moved to the Washington, D.C. office of Patterson, Belknap, Webb & Tyler ("PBWT"). At that time, PBWT agreed to take on the defendants as clients even though they could not pay PBWT until the IRS released their assets. Because PBWT did not normally maintain retainer agreements with its clients, the parties did not enter into one. Although PBWT did not discuss its fee/rate system with defendants, Stearns did inform defendants of his own rate and told them that PBWT was "more expensive" than Barnett & Alagia.
 
 
 4
 For the next two years, Stearns and other PBWT attorneys and staff provided a variety of legal services to defendants, including (1) representing defendants in tax matters involving the IRS and the State of Maryland, (2) attempting to obtain pardons from criminal convictions of the LaRosas, and (3) representing the LaRosas in criminal parole proceedings. PBWT also represented Dominick LaRosa in his individual capacity in matters relating to his rights as a shareholder of Canaan International Limited ("Canaan matter"). In December 1990, Stearns left PBWT and began working at another firm. PBWT ceased representing the defendants on all matters after Stearns left.
 
 
 5
 PBWT claims that it sent statements for services and expenses to the LaRosa Company on seven different occasions, and that it also sent seven statements to Dominick LaRosa regarding the Canaan matter. In support of this claim, PBWT submitted to the district court copies of the statements, which detail its services, hourly rates, and expenses. PBWT also submitted the deposition testimony and affidavits of Stearns and other firm attorneys, who confirmed that they had sent the statements to the defendants periodically from June 1989 to January 1991. The last statements to defendants (sent after Stearns left PBWT) indicated that the LaRosa Company owed $246,792.19 and that Dominick LaRosa owed $123,971.95. The defendants dispute that PBWT sent statements of services and expenses. In support of their position, they presented Dominick LaRosa's deposition testimony stating that he did not remember ever seeing the statements. Regardless, it is undisputed that the defendants never objected to the accounts stated in PBWT's statements for services and expenses.
 
 
 6
 In May 1991, the IRS released the defendants' assets. On June 10, 1991, PBWT wrote to defendants regarding their outstanding account. Defendants did not send payment or any other response to PBWT.
 
 
 7
 In August 1991, PBWT filed suit against members of the LaRosa family and the LaRosa Company, seeking to recover damages stemming from unpaid legal services. After discovery, PBWT filed a motion for partial summary judgment against all defendants under the theory of accounts stated for its legal services. In February 1993, the district court granted PBWT's motion on the grounds that PBWT had provided extensive legal services to defendants and sent statements and demands for payment to defendants, and that defendants' failure to object to the account for one and a half years constituted an implied agreement to pay the account as a matter of law. The court ordered the defendants to pay the full amount of the account, and also to pay prejudgment interest from May 8, 1991, the date their assets were released by the IRS.
 
 
 8
 Defendants now appeal.
 
 II.
 
 9
 Under Maryland law, a claim for account stated has three elements:
 
 
 10
 1. a previous transaction between the parties giving rise to the indebtedness from one to the other;
 
 
 11
 2. a rendition of an account to the party sought to be charged reciting the amount of the existing debt; and
 
 
 12
 3. a promise, express or implied, to pay this balance.
 
 
 13
 See Wathen v. Pearce, 3 A.2d 486, 491 (Md.1939). The third element, implied assent to pay the stated balance, may be established by showing that the defendant did not object to the account statement within a "reasonable time" after receiving it. See Baltimore County v. Archway Motors, Inc., 370 A.2d 113, 117-18 (Md. Ct. Spec.App.1977).
 
 
 14
 Defendants contend that the district court erred in granting summary judgment to PBWT because there was a genuine dispute of material fact regarding each of the three elements. First, they argue that PBWT's work did not give rise to any indebtedness because they never gave consent for PBWT attorneys other than Stearns to work on their cases. Second, they point to Dominick LaRosa's deposition testimony that he does not remember seeing any of PBWT's bills, and draw the conclusion that there is a factual dispute as to whether PBWT actually sent any bills to them. Third, defendants contend that they never agreed to pay the amounts listed on PBWT's bills.
 
 
 15
 We disagree. As the district court explained, the evidence in this case plainly established all three elements of PBWT's account stated claim. First, PBWT provided legal services to defendants on a number of individual and corporate matters for two years. The defendants obviously knew that PBWT's services were not free, and their knowing acceptance of PBWT's legal advice and representation thus gave rise to at least some amount of indebtedness to PBWT.
 
 
 16
 Second, uncontroverted evidence demonstrates that PBWT sent seven statements to the LaRosa Company and Dominick LaRosa, and that defendants received these statements. PBWT attorneys, including Stearns, testified that they prepared and sent out detailed bills on seven different occasions, and also sent a demand for payment after defendants' assets were released by the IRS. In addition, Stearns testified that Dominick LaRosa discussed these statements with him. Defendants never controverted this testimony: they presented no evidence that PBWT failed to mail the statements or that they never received the statements. In fact, while LaRosa testified that he did not recall seeing the bills, he carefully avoided stating that he never received them.
 
 
 17
 Finally, the defendants did not object to any of the amounts stated on PBWT's bills, but rather continued to accept PBWT's legal services for one and a half years after receiving the first bill. Their failure to object to the correctness of the stated amounts and continued acceptance of PBWT's services for such a long period of time constitutes an implied agreement to pay the account stated. Therefore, we hold that the district court correctly decided that PBWT established its entitlement to recover on its account stated claim.
 
 III.
 
 18
 For the foregoing reasons, the judgment of the district court is
 
 
 19
 AFFIRMED.