## LYMAN T. RANSTEAD *vs.* CHARLES F. RANSTEAD and KATE A. RANSTEAD.

### *Compensation for Services by Co-tenant.*

One of three joint owners undertook the care and management of the common property, directing the improvements, collecting rents, &c., and for such services claimed compensation. He testified that it was understood by all the parties interested that he was to be paid for his services; and that he had fixed his price at $2,500 per annum, and that he understood that sum to have been satisfactory to all concerned. His co-tenants testified that no definite amount was agreed upon as the compensation to be allowed him, but that they had determined upon $1,000 as proper compensation for the year immediately following their father's death, but as to the time of his service subsequent to the expiration of the first year. no definite agreement was made as to compensation. The testimony in regard to the respective contentions was conflicting, and in some particulars very indefinite and inconclusive; and it was not shown that there ever had been any concurrent determination on the part of his co-tenants as to the amount of compensation he was to receive for the first year's service, or that their determination had ever been made known to him. HELD:

1st. That in the absence of evidence showing that any specific amount had been agreed upon as compensation, he was entitled to a reasonable amount for the services he performed.

2nd. That having himself placed an estimate upon the value of his services, by stating, when it was proposed to him that there should be a settlement between himself and the other parties in interest, that he should claim $2,000 for the first year, and would want a like sum for the ensuing year, he ought not to be allowed more than he then claimed, and such amount being reasonable he was entitled to the same.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, and McSHERRY, J.

*J. Alexander Preston,* and *Bernard Carter,* for the appellant.

While there is no sufficient evidence that the parties agreed to any particular rate of compensation, yet having shown that it was perfectly well understood and agreed that the appellant should manage the property, and should be paid therefor, it follows that he is entitled to receive whatever sum the Court finds upon the evidence his services are fairly worth.

If there be a contract of service which is silent, or indefinite, in regard to compensation, the party who renders the service may recover pay under a *quantum meruit.* 2 *Parsons on Contracts,* 59, *55.

A contract as between tenants in common may be implied, that one shall be compensated for services performed in reference to common property ; this contract may be implied from all the facts and circumstances of the case. *Freeman on Co-tenancy, sec.* 260; *Bradford vs. Kimberly,* 3 *Johnson's Chan.,* 433; *Strother's Adm'r vs.*

*Butler,* 17 *Alabama,* 733; *Russell vs. Russell,* 62 *Alabama,* 48; *Powell vs. Jones,* 72 *Alabama,* 399.

Where there is a definite understanding that a co-tenant shall be paid for his services and no amount fixed, he will be paid what is reasonable. *Sears vs. Munson,* 23 *Iowa,* 388.

And though in this case it is not necessary to rely on the principle, yet it is true, that where there is a contract by which the party employed agrees to leave the compensation entirely to the employer, a Court may give what the employé ought to have. 2 *Parsons on Contracts,* 59, (*55).

*W. Cabell Bruce,* and *William A. Fisher,* for the appellee, Charles F. Ranstead.

The following authorities were referred to : *Hamilton vs. Conine and Purviance,* 28 *Md.,* 635; *Israel vs. Israel and Wife,* 20 *Md.,* 120; *Taylor vs. Baldwin,* 10 *Barb.,* 582.

*John T. Morris,* filed a brief for the appellee, Kate A. Ranstead.

ALVEY, C. J., delivered the opinion of the Court.

It appears that the late Charles Ranstead died intestate on the 25th of April, 1885, seized of large and valuable real estate, situate in Baltimore City, and elsewhere ; and part of which real estate consisted of a parcel of land of about one hundred acres, commonly called "Spring-Gardens," and now designated as "Ranstead's Improvement," lying along and bordering on the Middle Branch of the Patapsco river, within the limits of Baltimore City. This land was unimproved when acquired by the intestate in 1872, and it was purchased by him with a view to extensive improvements. A large part of the land was low and marshy, and sometimes covered with

water. The plan of improvement adopted, and partly executed by the intestate in his life-time, was to fill up the low ground and render it suitable for building lots, and to pile and fill out along the water front, so as to make it available for the erection of wharves and docks. Considerable progress had been made in these improvements before the death of the intestate. Some portion of the low land had been filled up and graded, and bulkheads and wharves had been constructed, and some portion of the land had been let out by him on leases for various purposes. From these improvements he was in the receipt of a considerable revenue. The work of improvement was in active progress at the time of his death, and was, and had been from the commencement, under the management and supervision of his son Lyman T. Ranstead, the present appellant.

The intestate left surviving him a widow, Harriet Ranstead, (a second wife,) and three children, namely, Lyman T. Ranstead, Charles F. Ranstead and Kate A. Ranstead, all of full age; the two sons being children by his first wife, and the daughter by his surviving widow.

Very soon after the death of the intestate, the parties entitled to his estate had a conference and concluded that the real estate should not then be divided, but should be held together as joint or common property; and upon coming to that conclusion, it was deemed proper by them all that Lyman T. Ranstead should continue to manage and supervise the property on the Patapsco, known as "Ranstead's Improvement," as he had done for the father during his life. This he did, and continued to manage and direct the improvements, collect the rents, and other revenues accruing therefrom, until the 15th of October, 1887, when his management ceased, upon the division of the property. Then, in the attempt to effect a final settlement in respect to the in-

come and disbursements, that had been received and made by Lyman T. Ranstead, while in charge of the common property, a dispute arose as to the extent of his accountability, and the amount that he claimed should be allowed him as compensation for managing the property, directing the improvements, collecting rents, etc., during the time that intervened between the death of the father and the division of the property; and that dispute has resulted in the present litigation.

The bill was filed on the 29th of November, 1887, by Charles F. Ranstead against Lyman T. Ranstead and Kate A. Ranstead, as defendants; the widow having previously relinquished her dower interest in the estate for a valuable consideration. The bill charges that Lyman T. Ranstead, the defendant, had entered into possession of the Spring-Gardens property, as tenant in common with the other parties in interest, shortly after the death of their father, and had collected all the rents and profits of the same, until October 15th, 1887, and had refused or neglected to account to the plaintiff and his sister for their respective shares of such income; and the bill then prays for a decree requiring the defendant Lyman T. Ranstead to render full account of all his collections from said property, and that he be compelled to pay to the plaintiff and his sister their net shares of the same.

To this bill Kate A. Ranstead answered, substantially admitting the allegations made against her brother, and thereby coinciding with the plaintiff, and in the objects and purposes of the bill.

The defendant, Lyman T. Ranstead, in his answer, avers that immediately after the death of his father he had entrusted to him the sole and exclusive management of "Ranstead's Improvement," as the agent and employé of the parties entitled thereto jointly with himself, and that he had made all the improvements thereon

that had been made since that time, and collected all the income since derived from the property, and had kept regular books of accounts of all his receipts and disbursements. He filed with his answer such books of accounts, and with them a statement in which he charges for his services at the rate of $2,500 per annum, for two years and five months, making a sum total of $6,041.66, upon which he gives credit for $4,900, as cash received on account, leaving a balance in his favor of $1,141.66, on the claim as exhibited with his answer.

A considerable mass of testimony was taken, bearing specially upon the claim for allowance of compensation to the defendant, Lyman T. Ranstead, and the amount thereof; and the Court below decreed an allowance to him as compensation at the rate of $1,000 per annum, amounting, for the time of service, as stated in the decree, to the sum of $2,438.35. From this decree the defendant, Lyman T. Ranstead, has appealed; and the single question here is, whether he is entitled to be allowed any larger sum than that allowed by the decree below?

The appellant contends that it was understood by all the parties interested, at the time he resumed charge and management of the Spring-Garden property, after his father's death, that he was to be paid for his services; that he had fixed his price at $2,500 per annum, and that he understood that sum to have been, at the time, satisfactory to all concerned.

While, on the other hand, the appellees contend that no fixed or definite amount was agreed upon as the compensation to be paid to the appellant for his services; but that it was agreed immediately after their father's death that the appellant should continue in charge of the Spring-Garden property for one year, and should receive for his services such compensation as the appellees might fix, and that they had determined upon $1,000 for

the year as proper compensation for him; and that as to the time of his service subsequent to the expiration of the first year, no definite agreement was made as to compensation; and consequently, as to that time, if entitled to anything, he is not entitled to more than at the rate of $1,000 a year. And this seems to have been the view adopted by the Court below.

The testimony in regard to these respective contentions is conflicting, and in some particulars very indefinite and inconclusive. We shall not undertake to recapitulate it, as that would answer no useful purpose. But there are some few prominent facts, to be gathered from the whole mass of evidence, which may be regarded as undeniably established; and these, in the light of certain well settled principles of law upon the subject, will enable us to arrive at what would appear to be a fair and just conclusion.

It is certainly a well established principle that joint or common owners are not entitled to charge for services rendered in the care and management of the common property, except where there has been a special agreement or a mutual understanding to that effect; and Courts are not disposed to extend such agreements beyond their plain and reasonable import. *Hamilton vs. Conine & Purviance*, 28 *Md.*, 635; 11 *Am. & Eng. Encycl. of Law*, 1111; *Freeman on Co-tenancy*, sec. 260. But the mutual understanding of the parties may be proved by the facts and circumstances of the case; and though it may not be shown that any specific amount had been agreed upon as compensation, yet, if it clearly appears to the satisfaction of the Court that compensation for the services to be rendered was to be made, and services be rendered with reference to such understanding, the law will imply an obligation to pay a reasonable amount. Therefore, though the contention of the appellant be not supported by the proof to the extent of showing that

there was an agreement for compensation at the rate of $2,500 per annum, yet, unless there is satisfactory evidence to show an agreement for a less sum, he will not be precluded from an allowance of a reasonable amount, as it is clear beyond serious question that he performed the services for which claim is made, and that such services were rendered and accepted with the understanding of all concerned that the appellant was to receive compensation therefor. The appellees seek to restrict the appellant to the allowance of $1,000 a year, because, as they say, it was agreed that they should fix the compensation for the first year, and that they did fix it at $1,000. Such an agreement as that set up by the appellees, in respect to compensation, is positively denied by the appellant; and it may be well doubted whether, upon the proof before us, there was any such definite or determinate agreement upon the subject as that contended for by the appellees. But even conceding that by the agreement the brother and sister were to be allowed to determine what compensation the appellant should receive for the first year's service, the evidence is far from being satisfactory to show that any such determination upon the amount of compensation had ever been made as would bind the appellant. It was not a mere capricious or haphazard determination, surely, upon which the appellant was required to depend. The burden of proof, both of the fact of the right to determine, and of the fact that they had determined, is upon the appellees; and the evidence relied on for this purpose, to say the least of it, is very indefinite,—indeed, quite inconclusive. It fails to show that there had ever been any joint or concurrent determination arrived at, or that the matter had ever been the subject of conference between the appellees. It is not pretended in the testimony given by them, that they had ever deliberately considered the matter, or given notice to the appellant of their deter-

mination upon the subject. Certainly, good faith and fair dealing required this of them; and that such reasonable notice of the determination should have been given as would have enabled the appellant to determine upon his course, at the expiration of the first year's service. It was important to all concerned that the property should not be without proper supervision; and this was matter of interest no less to the appellees than to the appellant. They had no claim upon him for gratuitous services in the management of the common property; his interest was but the one-third. The property was valuable, and of a nature to require for its improvement, and the enhancement of its value, special care and management; and for such service the appellant, from his long connection with the property, and his familiarity with the plan of improvement, would seem to have possessed peculiar qualifications. It was, doubtless, in consideration of these special qualifications for the management of the property, in the interest of all concerned, that the appellees agreed that the appellant should continue his previous connection with it. And as he swears that he devoted his whole time and attention to the management and supervision of the property, during the time that it was under his control, justice would seem to require that he should be fairly compensated for his services.

The question then is, what sum in fairness ought to be allowed, under all the circumstances of the case? This question is not easily answered, and specially not upon the evidence before us. But it is shown that for his services in the management of this same property, and directing the improvements thereon, for some years preceding his father's death, the appellant was allowed by the administrators of the estate at the rate of $1,500 per annum; and during which time he had his board paid, and the use of a horse and buggy furnished him,

Ranstead *vs.* Ranstead.

by his father.  In addition to this, there were five witnesses who testified that they were well acquainted with the property and the improvements made thereon, and with the nature and extent of the services rendered by the appellant; and they variously estimated the value of his services at from $2,000 to $5,000 per annum. These estimates are indefinite, it is true, and would be difficult to apply in arriving at results, except by way of average, as is sometimes done.  But it is shown in the evidence, and that, too, without contradiction, that the appellant himself placed an estimate upon the value of his services, by which, we think, he should be bound. Phillips, a witness for the appellees, and who, upon the occasion referred to by him, represented the widow, his mother, and the sister Kate A. Ranstead, testifies that at the end of the first year, he made a statement of the business affairs between the appellant and the other parties in interest, and proposed to the appellant that there should be a settlement; that he, the witness, desired to know of the appellant, upon that occasion, what salary he would want for the second year: that the appellant denied the existence of the agreement for the past year, and said "that he should claim $2,000 for the past year, and would want $2,000 for the year to come."  To this claim of the appellant the witness says he did not agree. We think, however, in view of all the circumstances of the case, that the claim then asserted was reasonable, and that the appellant ought not now to be allowed more than he then stated his claim to be.  We shall therefore reverse the decree appealed from and remand the cause, that the appellant may be allowed in his account a claim for compensation at the rate of $2,000 per annum, instead of the allowance at the rate of $1,000 per annum, as decreed by the Court below.

*Decree reversed, and*
*cause remanded.*

(Decided 17th June, 1891.)