## John B. Knight, Appellee, v. Thomas D. Knight, Appellant.

### Gen. No. 13,923.

1. EVIDENCE—*when proof as to usual and customary real estate commission proper.* If a specific sum is claimed to have been agreed upon as a commission to be paid a broker for his services, proof of the usual and customary charge, which is more than the specific amount so claimed, is competent.

2. TRUSTEES—*when entitled to compensation.* A trustee is entitled to compensation where he renders his services in the expectation of payment, such expectation being known to and coincided in by the principals; no absolute agreement to pay a specific amount is essential to his right of recovery.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed July 6, 1908.

**Statement by the Court.** This is an appeal from a judgment recovered by appellee against appellant for the sum of $4,000 and costs, in an action of *assumpsit*. The defendant pleaded the general issue. No question is raised as to the sufficiency of the declaration, on the hypothesis that an action will lie. The cause was tried by the court, without a jury, by consent of the parties. The court, after finding for the plaintiff, overruled defendant's motion for a new trial and in arrest of judgment, and rendered judgment on the finding.

Moses G. Knight, deceased, the owner in his life-

time of the premises involved in the cause, died testate, leaving a wife and five children, all of whom have, since his death, departed this life except the defendant, Thomas D. Knight, and Mrs. Corinne True, formerly Corinne Knight. There are two codicils to the will, and so much of the will and codicils as is involved in this cause is abstracted, correctly, as we think, as follows:

"Fifth Clause.   Testator gives to defendant, his son, and to defendant and plaintiff as trustees for his daughter, Corinne True, said South Clark street property, known as Kentucky Block, for their (his son's and daughter's) natural lives with remainder upon the death of either to the children of such son or daughter respectively; such remainder to vest upon the death of the parent, but to be enjoyed in common with the surviving son or trustees for his daughter, till the death of the last survivor of testator's son and daughter.

By the seventh clause the testator directs that the trustees for said daughter pay to her from time to time, as they may think proper and for her interest, the net income of the trust estate held for her.

The two codicils empower his son, the defendant, and plaintiff, as trustees for his daughter, Corinne True, to lease said premises known as Kentucky Block, and as numbers 195, 197 and 199 South Clark street, for any term of years, not to exceed 99, upon such terms and conditions as they may deem advisable and for the best interests of his estate, the rent thereunder to be received by and belong to the respective parties in accordance with the provisions of the will, i. e., to his son, the defendant, and to the trustees for his daughter, Corinne True."

The will and codicils were probated August 25, 1903.   The property in question was known as the Kentucky Block, and a building on it was numbered and known as numbers 195, 197 and 199 S. Clark street, in the city of Chicago.   It is a piece of land on the east side of Clark street, a north and south street, with a frontage on that street of 63 21/100 feet,

and is 90 feet in depth, and bounded on its north side by an east and west alley, which is between Monroe and Adams streets, which are east and west streets. Next south of the Knight property there was, at the time of the transactions in question, a lot belonging to Rivers McNeill, fronting forty feet on Clark street and ninety feet in depth, and next south of the McNeill lot was a lot fronting eighty-seven feet on Clark street, being the northeast corner of Clark and Adams streets, and called, in the evidence, the Henry Field corner. Next east of all the pieces of land described there was a strip fronting fifty feet on Adams street and running north to the east and west alley above mentioned. The claim of the plaintiff, John B. Knight, is for commissions, as a real estate broker, for procuring, as lessee, the Commercial National Safety Deposit Company, which company was organized to take the lease for the Commercial National Bank, under a lease for ninety-nine years from May 1, 1905, at an annual rental of $25,000. The lease was executed April 20, 1905.

The evidence is substantially as follows:

John B. Knight testified that he had the management of the property for twenty or thirty years for Moses G. Knight, and that, since his death, he controlled and managed it for the defendant and his sister, Mrs. True, until the aforesaid leasing of it, and that he collected the rents, charged commission and rendered accounts therefor. The defendant does not deny this. He says of plaintiff, "He was the real estate agent to rent the property and collect the rents, and he was paid a commission for what he did." Plaintiff further testified, that, after the will was probated, defendant came to his office on several occasions to talk about getting a ninety-nine year tenant; that, in December, 1904, he, plaintiff, learned that the Commercial National Bank was looking for a location, and had obtained a lease of part of the property fronting on Adams street, corner of Clark, and was

trying to get a contract from McNeill for the forty feet adjoining the Henry Field property, and he told defendant of this and that the bank would probably want the 63 feet, and that it was better to wait and let the bank approach them. January 13, 1905, defendant telephoned plaintiff that he had a conversation with one Trainor and feared that Trainor might feel himself authorized to offer the property to the bank, and that he, plaintiff, had better hurry and see Mr. Eckels, president of the bank, and offer the property before Trainor could reach him, which plaintiff did, and informed Mr. Eckles that Trainor was unauthorized in respect to the property. Subsequently, February 8, 1905, plaintiff received a communication from Mr. Owen F. Aldis, informing him that he was the only person authorized to act for the bank in the matter, and expressing a desire to make an appointment with him. The next day, February 9th, plaintiff wrote making an appointment with Mr. Aldis, and Mr. Aldis and he met and discussed the matter, but came to no conclusion as to what the rent would be, plaintiff deferring that question till he could consult with defendant and Mr. True, Mrs. Corinne True's husband. Plaintiff says he informed defendant of what had occurred between him and Mr. Aldis, and defendant said to plaintiff that he thought the time had come when they should have an understanding as to what commission he, plaintiff, was going to charge him, and they agreed that the rent should be $25,000, and plaintiff said if a ninety-nine year lease should be made at that rent, the regular commission, in accordance with the rules of the Real Estate Board, would be $15,625, but that he was willing to do it for $10,000, and defendant said he, plaintiff, ought to be satisfied with $7,500, and plaintiff said he would not, when defendant said he would talk the matter over with his sister, Corinne, and if she would be satisfied he would be.

It appeared from the testimony of the defendant

that Mr. Aldis offered $20,000 for the first five years, $22,500 for the next five years, and $25,000 per annum thereafter, and that the plaintiff advised defendant to accept that offer, which offer defendant, after conversing with his wife and Mrs. True, refused. This is not contradicted. Finally $25,000 per annum was agreed on as the rent.

Plaintiff testified that in one of the interviews with Mr. Aldis, at which the defendant was present, Mr. Aldis, who was seeking to obtain a lease for less than $25,000 per annum, said to defendant: "Now, Mr. Knight, remember that in this transaction I am charging you no commission," and defendant said, "I understand that, Mr. Aldis, but that makes no difference in my attitude. I have got to pay John B. Knight a commission." Mr. Aldis testified in relation to the interview: "I turned to Mr. Thomas Knight and said, 'You are saving commission, the estate does; I charge no commission;' and Mr. Thomas Knight then said, 'But the estate has to pay a commission to John B. Knight here.'" On cross-examination, this witness said: "He said, 'We have to pay a commission to Mr. Knight'." Again: "My recollection is, that he said 'we' or 'the estate'—the exact wording I can't state—'have to pay Mr. John B. Knight, here, a commission.'" Defendant testified in regard to the interview above mentioned, "My recollection of the reply made to Mr. Aldis' suggestion was, 'Mr. Knight expects to be paid for his services.' I think Mr. Aldis used the word commission. I might have said, 'he expects to be paid' or 'expects compensation,' or possibly 'expects a commission.'"

GEORGE A. TRUDE, for appellant; W. D. LAUNDER, of counsel.

OLIVER & MECARTNEY, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The contentions of counsel for defendant, appellant here, are as follows:

1. The finding of the trial court is against the weight of the evidence. Our conclusion from the evidence, which is substantially set forth in the preceding statement, is that the plaintiff conducted the negotiations for the lease, and was relied on by the defendant so to do; that the defendant also knew and understood that the plaintiff expected a commission, if successful, and that the only question in respect to which the defendant differed with him, at the first, was as to the amount which he should be paid, the plaintiff claiming $10,000, and he, the defendant, claiming that $7,500 was enough. Plaintiff testified that after the conversation between him and defendant about commission, in which he said he would charge $10,000, Mrs. True came to his office, and in consequence of what she said to him, he sent for defendant, who came, and he said to defendant that Corinne had been to see him and was a little puzzled, and defendant asked what she said, and plaintiff told him that she said that he, defendant, had told her that there was no commission to be paid, and that she said to witness, "Cousin John, I am ready to pay my $5,000." Plaintiff also testified that prior to Mrs. True coming to the office, as stated, he had never spoken to her about commission. This evidence is uncontradicted.

It is admitted by defendant that he gave plaintiff $1,000 on account of his services, but says it was a gift or present. It is stipulated that Mrs. Corinne True, defendant's sister, paid plaintiff $5,000.

In regard to the conversation between the parties in reference to the commission to be charged, there is no substantial difference in their testimony. The defendant concludes his testimony as to the interview by saying: "I said $7,500 would be the outside figure. 'Well,' he said, 'I want $10,000.' I said, 'I will have a

talk with Mrs. True and then I will have another talk with you, or I will confer with you both,' and I left. I didn't say that if it was satisfactory to Mrs. True it would be satisfactory to me.''

The defendant made numerous contradictions of plaintiff's testimony, saying: ''He did not say to me in that conversation, 'When are you going to pay the balance?' and I did not reply 'Some time.' I did not at any time say to him that I wanted him to find a tenant for our property on Clark street for 99 years, or anything of like import. I never said to him, 'I think it is now time to fix your commission,' and he did not say he thought I ought. I did not, during the conversation, after considerable conversation regarding the $10,000 Mr. John B. Knight wanted, say, 'I will talk the matter over with my sister; if she is satisfied I am'.''

Defendant testified that plaintiff said to him, on several occasions, that he had no legal claim against him, which plaintiff denied.

David Throckmorton is employed by the plaintiff, has charge of his books, and knew of the negotiations for the lease. He testified that defendant telephoned to the plaintiff's office, while plaintiff was absent, and wanted to know what was being done about the 99-year lease, and witness answered that he knew nothing new, but would find out when Mr. Knight came in, and defendant told him to tell Mr. Knight that other brokers were running to him about the property, and if he did not hurry up somebody else would get the commission. The defendant's evidence indicates that, before he sent the $1,000 to the plaintiff, he had consulted his counsel, Mr. Trude, as to his liability. He testified, ''I called up Mr. Knight, in the presence of George Trude, and said that I had $1,000 which I could use in that way, and that I was going to send it over to him.'' He calls this $1,000 a present. His conclusion that he is not liable for anything, after substantially agreeing to a charge of $7,500, was probably an after-

thought, after being advised by Mr. Trude, as the latter argues here, that the plaintiff, as trustee, could not recover.

The evidence is conflicting, but that of the plaintiff, to the effect that there was an understanding between the parties that the plaintiff should be paid a commission for his services, is corroborated by the testimony of Aldis and Throckmorton, and also by the fact, clearly to be inferred from the evidence, that the defendant told Mrs. Corinne True what the plaintiff claimed, as she came to the plaintiff and told him, not having had any previous conversation with him on the subject, that she was ready to pay her $5,000. Certainly, the finding of the court that there was an understanding and agreement between the parties that plaintiff was to be paid a commission for his services, is not manifestly against the weight of the evidence.

2. Counsel contends that the court erred in admitting evidence that there were usual and customary fees in such cases as this and what they were. This contention we cannot sustain. The evidence is that the usual and customary commission is 2½ per cent. upon the rent multiplied 25 times, or on a capitalization on a 4 per cent. basis, making the commission in this case $15,625. But, as plaintiff had said he would charge only $10,000, and as defendant had paid $1,000 and Mrs. True $5,000, the court found $4,000 to be the amount due plaintiff.

3rd contention: That the parties were co-tenants and therefore it was incumbent on the plaintiff either to prove an express agreement of defendant to pay plaintiff for his services, or a clear mutual understanding that the plaintiff was to receive compensation for his services in negotiating for said lease. As previously stated, the evidence is sufficient to warrant the finding of the court that there was such understanding. Counsel for defendant seems to rely on the proposition that no definite amount was agreed on between the parties in express terms. The answer to this is

two-fold: First, when defendant was informed by plaintiff that he would charge $10,000, the defendant said, "I will talk the matter over with my sister, Corinne, and if she is satisfied I am." This was, in substance, a promise to pay his proportion of $10,000, if such charge should prove satisfactory to Mrs. True. Mrs. True, having learned of the amount of plaintiff's charge, not only expressed her satisfaction with it, but paid her share of it. The condition of defendant's promise was, therefore, amply fulfilled. It is true that defendant denies having said that he was satisfied if Mrs. True would be. But the court, acting in the place of a jury, heard the witnesses and observed their manner of testifying, and it was the province of the court to pass on the credibility of the witnesses as to matters in respect to which they differed, and we, not having as good opportunity as the court had, to pass on their credibility, respectively, cannot say that the court erred in giving credence to one rather than another. That the defendant communicated to Mrs. True what plaintiff said as to the amount which he would charge, is, as we think, evident from two un-contradicted facts, viz: that the plaintiff did not prior to the time Mrs. True came to his office, speak to her in regard to the amount of his commission, and that, subsequently to the conversation between plaintiff and defendant, she came to plaintiff and said she was ready to pay her $5,000. Secondly. It is not essential to plaintiff's right of recovery that there must have been an absolute agreement, in express words, to pay a specified sum as commission.

In Ranstead v. Ranstead, 74 Md. 378, a very similar case, the court say: "It is certainly a well established principle that joint or common owners are not entitled to charge for services rendered in the care and management of the common property, except where there has been a special agreement or a mutual understanding to that effect; and courts are not disposed to extend such agreements beyond their plain

and reasonable import. Hamilton v. Conine & Purviance, 28 Md. 635; 11 Am. & Eng. Encycl. of Law, 1111; Freeman on Co-tenancy, sec. 260. But the mutual understanding of the parties may be proved by the facts and circumstances of the case; and though it may not be shown that any specific amount had been agreed upon as compensation, yet, if it clearly appears to the satisfaction of the court that compensation for the services to be rendered was to be made, and services be rendered with reference to such understanding, the law will imply an obligation to pay a reasonable amount.'' This decision is in accordance with sound reason, and is consistent with the decisions in analogous cases.

4. It is contended that plaintiff, as trustee, could not legally charge a commission for his services in respect to the estate. Counsel say that he has not been able to find any case in point except Zander v. Feely, 47 Ill. App. 659, which we do not regard in the least applicable to the facts in this cause. The plaintiff is trustee of an undivided one-half of the property, for the benefit of Mrs. True, by appointment in the will of Moses G. Knight, deceased. Therefore, by the statute approved June 18, 1891, in force July 1, 1891, he is entitled to a reasonable compensation for his services. Hurd's Stat. 1905, chap. 3, parag. 136, p. 127. That the amount charged by him is reasonable is amply proven by the evidence. There is no contest between plaintiff and Mrs. True, his *cestui que trust*. She agreed to plaintiff's charge and paid her proportion, half the charge, or $5,000. She was satisfied, and the evidence warrants the conclusion that the defendant said he would be satisfied if she would be; in other words, that he would agree to the sum of $10,000, as commission, if Mrs. True would so agree. He has paid $1,000, and the judgment is only for the remainder of his share of the charge. That the lease is of great value to the owners of the property is clear from the evidence. Mr. Snow, a witness of large experience in

Chicago real estate, testified: "I regard the lease negotiated by Mr. Knight as a most excellent lease for the landlord of the ground rent; considerably in excess of the fair market value of the land."

We find no reversible error in the record, and the judgment will be affirmed.

*Affirmed.*