## BERTELMANN v. LUCAS et al.

(Circuit Court of Appeals, Ninth Circuit. August 3, 1925.)

No. 4481.

**1. Equity ⊕⇒147—Court must exercise sound discretion on question of alleged multifariousness.**

As every case of alleged multifariousness must be governed by its own circumstances, the court must exercise a sound discretion on the subject.

**2. Equity ⊕⇒147 — Distinct and unconnected matters and transactions not joined in same bill.**

Several distinct and entirely unconnected matters or transactions cannot be joined in same bill.

**3. Equity ⊕⇒148(1) — Sustaining demurrer to bill for multifariousness held not abuse of discretion.**

Where cause of action against certain defendants arose out of will of plaintiff's testator, except part of controversy arising from execution and sale of plaintiff's one-ninth interest in decedent's estate, and controversy between plaintiff and other defendants arose out of contract and deed executed by him years later, with which first defendants had no concern, sustaining demurrer to petition for multifariousness, because it set forth distinct, unrelated, and disconnected causes of action in which defendants had no common interest, *held* not abuse of discretion.

Appeal from the Supreme Court for the Territory of Hawaii.

Suit by Frank C. Bertelmann against Mary N. Lucas and others. From a judgment of the Supreme Court of the Territory of Hawaii, affirming a decree for defendants sustaining a demurrer to the bill, plaintiff appeals. Decree affirmed.

Howard Hathaway and Norman D. Godbold, both of Honolulu, Hawaii, for appellant.

Robertson & Castle and A. G. M. Robertson, all of Honolulu, Hawaii, for appellees Mary N. Lucas and Charles Lucas.

Frear, Prosser, Anderson & Marx and W. F. Frear, all of Honolulu, Hawaii, and Edward Hohfeld, of San Francisco, Cal., for appellee Kilauea Sugar Plantation Co.

Arthur G. Smith and Urban E. Wild, both of Honolulu, Hawaii, for appellee McCandless.

E. A. Mott-Smith, of Honolulu, Hawaii, for appellees Janet M. Scott, Rubena F. Scott, and Bishop Trust Co., Limited.

Noa W. Aluli, of Honolulu, Hawaii, for appellee Lane and in pro. per.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. On March 15, 1895, Christian Bertelmann died testate, leaving a widow, three sons, and six daughters surviving him. At the time of his death, Bertelmann was seised of the land now in controversy, subject to a lease for the term of 25 years to the Kilauea Sugar Company, commencing November 1, 1890, and ending November 1, 1915. The only provisions of the will material to our present inquiry are the following:

"Third: At the expiration of 25 years lease with the Kilauea Sugar Co. it is my sincere wish and will that my lands shall befall in equal shares and interest upon my three sons, Frank Charles, Henry Godfrey, Christian Sylvester Bertelmann or then surviving sons or son. Provided however that at such a time these my sons or son shall pay to each one of my daughters or surviving daughters the sum of five thousand dollars ($5,000.00). In case one or two of my sons should be at that time, or within one year from that time unable to furnish, produce or raise the necessary amount to pay to each one of my daughters or surviving daughters his share of the $5,000.00 per capita, the two or the one of my sons will have a right to buy the whole of my land now leased to the K. S. Co. by paying:

"1. To each of my daughters or surviving daughters the amount aforesaid of $5,000.00.

"2. To my short coming son or sons the same amount of $5,000.00 each, being the same share as will be paid to my daughters. By doing so, they my sons or he my son will enter in full possession of all my lands; and their or his right and title will be undisputable, provided they or he (my sons or son) comply and fulfill the above mentioned conditions.

"* * * Fourth: Should none of my sons be able to pay these amounts, then my lands will be sold at public auction, or leased over again, according to circumstances and best advantage of my family. The money deriving from said sale or lease will be equally divided amongst my children or their lawful heirs and assigns after the distributive share of dower will have been given to my wife, Susan Bertelmann according to law."

On August 13, 1902, the appellant Frank Charles, one of the sons, mortgaged to Mary N. Lucas all his right, title, and interest in the land in controversy to secure the payment of the sum of $9,845, and transferred and assigned to the mortgagee his share of the rentals from the mortgaged property for the same purpose. This mortgage has never been foreclosed, and the rentals have been more than sufficient to pay and discharge the mortgage debt. On February 7, 1903, Mary N. Lucas also purchased at execution sale all the right, title, and interest of the appellant in and to the land in controversy, after the expiration of the lease to the sugar company. The judgment under which this sale was made was entered during the absence of the appellant from the territory of Hawaii, and without service of notice or summons, and the sale was made for a grossly inadequate consideration and is null and void. Before the time arrived for the performance of the conditions prescribed in the third article of the will, two of the sons, Henry Godfrey and Christian Sylvester, sold and transferred to Mary N. Lucas all their right, title, and interest in the land in controversy and their right to receive the amounts to become due them as short-coming sons under the will. Neither of these sons was able, within the year from the expiration of the lease to the sugar company, to furnish, produce, or raise the necessary amount to pay each of the daughters or surviving daughters the shares allotted to them under the will. Prior to that date, five of the six daughters had also transferred to Mary N. Lucas their right to receive $5,000, each, under the terms and conditions of the

will, and they are not now entitled to any further sums on account thereof. Before the time for the performance of the condition prescribed in article 3 of the will arrived, one of the daughters, Catherine, died, leaving three children, Walter W. Scott, Janet M. Scott, and Rubena F. Scott, as her sole heirs, for whom the Bishop Trust Company became guardian.

On June 20, 1911, Mary N. Lucas, her husband joining, executed a lease of the land to the sugar company for an additional term of 10 years from and after November 1, 1915, and the sugar company is now in possession, as lessee. On October 30, 1916, the appellant entered into an agreement with L. L. McCandless, John C. Lane and Noa W. Aluli, under the terms of which McCandless advanced the sum of $40,000 to the appellant to enable him to pay to his sisters, brothers, nieces, and nephews the several sums due them under the third article of the will, and in consideration thereof the appellant agreed to convey a four-ninths interest in the land to McCandless and a two-ninths interest to Lane and Aluli. On November 22, 1916, the appellant executed a deed to McCandless, Lane, and Aluli, in accordance with this agreement. The sum of $35,000 was thereupon tendered to Mary N. Lucas, as purchaser from and representative of the two short-coming sons and the five daughters, and the sum of $5,000 to the Bishop Trust Company, as guardian of the heirs of the deceased daughter. These tenders were refused, and the money thus tendered was deposited in the First National Bank of Hawaii, at Honolulu, under an agreement between the appellant and McCandless that the same should remain on deposit to keep the tender good until such time as the parties to whom the tender was made were required to convey or quitclaim all their estate and interest in the land in controversy to the appellant or until it was determined that he was not entitled thereto, or until the matter should be compromised by the parties.

In January, 1918, the appellant, McCandless, Lane, and Aluli commenced an action in ejectment against Mary N. Lucas and husband, the sugar company, the Scott heirs, and the Bishop Trust Company as their guardian, to recover possession of the land, and that action is still pending. The present bill in equity was thereafter filed by the appellant, as petitioner, against Mary N. Lucas and Charles Lucas, her husband, the sugar company, the Scott heirs, the Bishop Trust Company as their guardian, McCand-

less, Lane, Aluli, and others, as respondents, the above named being the only persons concerned on the present appeal. A more detailed statement of the facts as to each of the several claims or causes of action set forth in the petition is not deemed necessary at this time, in view of the limited scope of the questions brought here for review. The bill, however, is well described in its caption as follows:

"In Equity—To Remove Cloud from Title to Land, for an Equitable Accounting, for Cancellation of Instruments, to Compel Reconveyance and Delivery of Possession, and for Other and Incidental Equitable and Legal Relief Necessary to Remove Cloud from and to Quiet Title to Said Land."

The relief prayed against the Lucases was the cancellation of the sheriff's deed of February 7, 1902, an accounting under the mortgage of April 13, 1902, and a redemption from the mortgage, an accounting for rents collected, a decree quieting title and for possession, and for partition of the land in the event that the respondents were found to have an interest in common with the petitioner. The relief prayed against the sugar company was that it be enjoined from making further payments of rent to the respondents, and that it be required to pay such rents into the registry of the court for final distribution among those entitled thereto. The relief prayed against the Scott heirs and the Bishop Trust Company was an accounting for rents received since the date of the tender, an adjudication whether the grandchildren took anything under the provisions of the will, and, if so, the application of the rents received to the payment of any sum found due. The relief prayed against McCandless was that his contract and deed be decreed a mortgage, and as against Lane and Aluli that the conveyance to them be set aside and canceled. To this bill a demurrer was interposed on various grounds, among others that the bill was multifarious and that the petitioner had a full, complete, and adequate remedy at law. The demurrer was sustained by the Circuit Court, and the decree was affirmed by the Supreme Court of the Territory on the two grounds just mentioned. From the judgment and decree of the Supreme Court, the petitioner has appealed.

Story's definition of multifariousness has been very generally accepted by the courts. "By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the unit-

ing, in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill. In the latter case, the proceeding would be oppressive, because it would tend to load each defendant with an unnecessary burden of costs, by swelling the pleadings with the statement of the several claims of the other defendants with which he has no connection. In the former case, the defendant would be compellable to unite, in his answer and defense, different matters wholly unconnected with each other, and thus the proofs, applicable to each, would be apt to be confounded with each other, and great delays would be occasioned by waiting for the proofs respecting one of the matters, when the others might be fully ripe for hearing. Indeed, courts of equity, in cases of this sort, are anxious to preserve some analogy to the comparative simplicity of proceedings at the common law, and thus to prevent confusion in their own pleadings, as well as in their own decrees." Story, Eq. Pl. § 271.

But the chief difficulty lies in the application of the rule. As said by the Supreme Court in Shields v. Thomas, 18 How. 253, 259, 15 L. Ed. 368: "There is, perhaps, no rule established for the conducting of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in application, than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much an exception as a rule, and that conclusion is that each case must be determined by its peculiar features."

[1, 2] Or, as said in another case, to lay down any rule applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible. Every case must be governed by its own circumstances; and, as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Campbell v. Mackay, 7 Sim. 564. The rule is well settled, however, that several distinct and entirely unconnected matters or transactions cannot be joined in the same bill. 21 C. J. 413.

[3] Applying that rule to the petition in this case, we can find no connection whatever between the alleged cause of action against McCandless, Lane, and Aluli, and the alleged cause or causes of action against the remaining appellees. The cause of action against Lucas and wife and the Scott heirs arises out of the will of Christian Bertelmann, except that part of the controversy arising out of the execution sale and mortgage of the one-ninth interest. On the other hand, the controversy between the appellant and McCandless, Lane, and Aluli arises out of a contract and deed executed by the appellant some 20 years later, and with this latter controversy the remaining appellees have no possible concern. It is no answer to say that the land or the title to the land is the subject-matter of the action, and that all adverse claimants are proper parties thereto, because that conclusion does not follow. As said by the court in Gaines v. Chew, 2 How. 619, 642, 11 L. Ed. 402: "In general terms a bill is said to be multifarious, which seeks to enforce against different individuals, demands which are wholly disconnected. In illustration of this, it is said, if an estate be sold in lots to different persons, the purchasers could not join in exhibiting one bill against the vendor for a specific performance. Nor could the vendor file a bill for a specific performance against all the purchasers. The contracts of purchase being distinct, in no way connected with each other, a bill for a specific execution, whether filed by the vendor or vendees, must be limited to one contract."

From the standpoint of the appellant, it is no doubt desirable, if indeed not essential, that McCandless be made a party, because the money received from McCandless was used by the appellant in making the tender to Mrs. Lucas and the Scott heirs, and the appellant desires to make still further use of it in discharging his obligations to the parties to whom the tender was made. In other words, the appellant is asking a court of equity to set aside and cancel the conveyance to McCandless on the ground of fraud in its procurement, and at the same time to compel McCandless to make a forced loan to enable him to discharge his obligations to third parties. That a court of equity will grant no such relief is too plain to admit of discussion. If the appellant is successful in his attack on the conveyance made to McCandless, the consideration paid by McCandless and now in the bank must be restored to him as a matter of course, and the court will have no further concern with it.

From any viewpoint, therefore, we are of opinion that the territorial court did not

abuse its discretion in sustaining the demurrer for multifariousness, because the petition sets forth several distinct, unrelated, and disconnected causes of action in which the appellees have no common interest. Some of the appellees have discussed the sufficiency of the petition to state a cause of action as against them, but the sufficiency of the petition in that regard was not considered by the court below, nor will it be considered by this court on appeal.

The decree is affirmed.