HENRY O. REDUE ET AL. *v.* HENRY W. HOFFER-
BERT ET AL.

[No. 19, October Term, 1931.]

*Decided December 4th, 1931.*

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Ellis Peregoff and Derlin McKindless,* with whom was *William Saxon* on the brief, for the appellants.

*Eugene Frederick,* with whom were *Blades, Rosenfeld & Frederick* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

Henry W. Hofferbert, George W. Mitchell, Albert Burker, John William Zirckel, Lucius R. White, Jr., Henry O. Redue, Thomas B. Cornelius, and Edwin H. Brownley were interested in securing an issue of the neceessary capital stock for the opening of the Monumental City Bank, which had been incorporated in Maryland for the purpose of conducting a banking business. The plan of flotation included a capital of $200,000 and a paid-in surplus of $50,000, which were to be obtained by a sale of the shares of stock, whose par value was $10 a share, at $12.50 a share. One-half of the capital stock had been so sold, and it was necessary for the other half to be issued before the bank could be opened for business. The parties named accordingly subscribed for all the residue of the capital stock, and paid for it on the agreed basis of $12.50 a share. The purchase was undertaken as a joint adventure, and the syndicate borrowed the money by executing and delivering on May 31st, 1927, their joint and several promissory note for $125,000, payable on demand to the order of Henry O. Redue, and by pledging 9,905 shares of stock of the Monumental City Bank as collateral security for the payment of the note, which was forth-

with indorsed by the payee to the Commonwealth Bank, the actual source of the money paid in by the syndicate. As the stock pledged was sold, the proceeds were credited on this note, and on July 2nd, 1928, the principal amount of the note had thus been reduced to $97,700, whose payment was demanded. Three of the makers, Henry W. Hofferbert, Albert Burker, and George W. Mitchell paid, in unequal portions, an aggregate of $77,700 on the principal and a due proportion of interest, so that there was owing on September 20th, 1928, to the Commonwealth Bank the principal amount of $20,000. This debt was paid on September 20th, 1928, to the bank by all of the subscribers borrowing the amount of one Robert V. White, on their promissory note.

On the last-named day there was due to the Empire Trust Company of New York an unpaid residue of $5,900 on a note executed and delivered by Albert Burker, Henry O. Redue, and Edwin H. Brownley for the common purpose and benefit of the members of the syndicate. Certain shares of stock of the syndicate were pledged for the security of this loan, which was paid in unequal parts by Henry W. Hofferbert, Albert Burker, George W. Mitchell, Henry O. Redue, and Edwin H. Brownley.

It will be observed that no part of the principal and interest of the notes discounted by the Commonwealth Bank and Empire Trust Company was paid by Lucius R. White, Jr., John William Zirckel, and Thomas R. Cornelius.

With the stock paid for by money borrowed from third parties and advanced by some of the members of the enterprise, and the sale of the stock lagging, the eight associates and three persons selected by them to serve as trustees executed on September 20th, 1928, a document under seal, which was at once their contract and declaration of trust, in order to embody in a certain and permanent form the terms of their undertaking from its formation, and to assure and provide for its completion. The document had incorporated with it a statement, which was agreed to be a correct summary of the situation at that time. This writing disclosed that, of the original holding of ten thousand shares,

two thousand, two hundred and eighty shares had been sold and the proceeds paid as credits on the notes held by the Commonwealth Bank and the Empire Trust Company; and that the residue of seven thousand, seven hundred and twenty shares had been deposited with the trustees named in the document of September 20th, 1928. It further appeared from this paper that, at various times between the beginning of their association and the last date mentioned, Hofferbert had advanced $60,600; Burker, $8,386.76; Mitchell, $5,000; Brownley, $1,597.56; and Redue, $1,206.22; but that nothing had been advanced by the three remaining associates. The discrepancy between the payments set out in the bill of complaint and in the statement does not affect the questions raised by the demurrer.

The agreement was drawn on the basis of every one of the syndicate having subscribed for one-eighth of ten thousand shares of stock, and of every one of them having, accordingly, agreed to be charged with one thousand two hundred and fifty shares of the Monumental City Bank at the price of $12.50 a share, and accrued interest. The agreement authorized and directed the three trustees to sell as much as possible of the stock, and to credit every one of the owners with the proceeds in the proportion of his share of the stock to that which had been deposited with the trustees. The stockholders, who had previously made advances for the benefit of the syndicate, were to be severally credited with the advances set forth in the statement, and the contract and trust were to continue in force no longer than five years after the date of execution, or until terminated either by a sale of all the stock deposited and its proceeds credited or distributed, or by the common consent of all the parties to the written agreement.

No other stipulations of the agreement require statement except those contained in the following paragraph:

"5. Each of the undersigned does hereby covenant and agree to be bound to the trustees and to the others of the undersigned for the full amount of the cost of the number of shares set opposite his name with accrued

"interest thereon and in addition, in the event of the insolvency or inability of any of the others to pay for the number of shares set opposite his name below, shall be liable for his proportion of the shares of him or those becoming insolvent or unable to pay as herein provided."

The trustees sold the stock deposited, and the loss sustained, with interest to June 1st, 1930, is alleged to be $38,776.88. An equal division of this loss among the eight members of the syndicate would make the portion of every one the sum of $4,847.11. Five of the eight, Hofferbert, Mitchell, Burker, Zirckel and White, have severally paid this amount, but Redue, Brownley and Cornelius have refused.

The above quotation of paragraph 5 of the contract makes it clear that the final share to be paid by any one will depend upon the number of the members of the syndicate who are solvent or have the ability to pay their respective shares, because the solvent members must bear equally the default of those who fail to pay through "insolvency or inability," and their covenant to this effect is not only to the trustees but to one another.

The five members who paid, and the three trustees, have united in the bill of complaint at bar against the three members who decline to pay their respective portions, and, in addition to the recited allegations, the complainants have averred that the accounts between the parties are complicated, and that, in order correctly to establish the liability of every member, it would be necessary to have an accounting and an inquiry into the solvency of the three defendants. The relief is fundamentally for complete performance after an ancillary accounting.

The three defendants separately demurred and separately appealed. The demurrers, however, present the same questions.

1. The defendants first object to relief in equity on the ground that these admitted facts constitute merely a breach of contract on the part of the defendants for which the plain-

tiffs have a full and complete remedy at law. The answer to this objection is the patent complication of accounts embracing a period of three years and between different persons, which, because of a failure of some to agree and pay, must be stated to ascertain the amount ultimately to be paid by every one of the solvent members of the syndicate, who are able and bound to pay, but which cannot be stated with complete and adequate justice without all the parties being before the court in order that, in a single suit, there may be determined, and enforced, the proportionate liability of eight obligors, who are principal debtors as to their aliquot portion of the cost of the shares of stock and the expense of the administration of the trust, and sureties for the respective liability of their co-obligors, who may, by reason of insolvency or inability, fail to pay their several proportionate amounts. The accuracy of this summary requires but little analysis of the allegations of the bill of complaint.

The association, which the members formed, was a joint undertaking for their common benefit, although some of their obligations were, in form, made several. It was an enterprise in which the associates assumed the chance of profit or of loss. In the event the shares of stock were sold at a loss, the ultimate amount of liability of a member, who would be able to pay as bound, depended, not only upon his obligation to pay as principal, but also upon his obligation as a surety for such others of the syndicate who might fail to fulfill their obligations because of insolvency or inability to pay. The obligations, therefore, of the associates were only provisionally established by the accounts of the trustee, which showed that the sale of the stock had resulted in a loss to the syndicate of $38,776.88. Before one-eighth of this deficit could be accepted as the final and total liability of every obligor, the solvency and ability of all the obligors to pay their several shares as principals must be known. It is true that the bill of complaint does not allege in precise terms the insolvency or inability of the defendants to pay, but the admitted refusals of the three defendants to pay their concededly just and due proportions must be assumed to have

been upon an honest ground, which could only be an insolvency or inability to pay, which are controversial facts, because the bill of complaint avers: "That in order to correctly establish the liability of the parties it will be necessary" for the court of equity "to inquire into and determine the solvency *vel non* of the respondents." Consequently it is evident from the allegations that the capacity of the three defendants to pay is not known, but must be determined before the basis for a final accounting exists.

The situation, therefore, was not where an action lay for the undisputed balance of an account or as a result of an account stated, nor could the plaintiffs bring an action at law on the theory of contribution, because the plaintiffs had not made any payment as sureties of a debt of the defendants nor as jointly liable with them *ex contractu*. 1 *Poe, Pl. & Pr.*, secs. 113, 114, and *Williston on Contracts*, secs. 1278, 1277, 345. The affairs of the syndicate have, however, reached a juncture where it becomes necessary to discover the solvency and ability of every one of the three defendants to pay in whole or in part. Not only does the final amount of the liability of the obligors as principals and sureties for one another depend upon the undetermined question of the solvency or ability of one, two, or three of the defendants, but also upon the solvency and ability of the other obligors, who are plaintiffs, to pay the additional sums for which they would be bound as sureties in the event of the insolvency or inability of one or more of the defendants to pay the obligations of a principal or surety. There are other circumstances which increase the complexities and difficulty of a certain and conclusive finding of the relative rights and liabilities of the associates *inter sese*. Seven of the syndicate made payments by way of loan and advancement in furtherance of the common scheme. These loans and advancements were made at various times, for different application, and in disparate amounts, although all were connected in such a way that in combination they form a part of but a single transaction. Again, the trustees were bound faithfully and diligently to perform and complete the administration of their

trust, which involved the payment of proper charges and expenses, and their indemnification by the beneficiaries. The adjudication of these and other interlocking and interdependent issues of law and of fact is not possible in a single action at law, and a court of chancery is the only jurisdiction with principles appropriately animated and controlled by equitable considerations, and with procedure adequately adaptable and comprehensive to administer justice and decree full and final relief among all the parties combined in a single suit. So it may be affirmed with confidence that the rights and liabilities of the parties to this appeal are properly cognizable in equity. *Pomeroy's Eq. Juris.* (4th Ed.), secs. 186, 1421; *Roth v. Stuerken*, 124 Md. 404, 409-410, 92 A. 808; *Miller's Equity*, sec. 721, pp. 823, 824; *Thompson v. Young*, 90 Md. 72, 74, 44 A. 1037; *Hamilton v. Conine*, 28 Md. 635, 641-643, 92 Am. Dec. 724; 1 *Poe, Pl. & Pr.*, secs. 318-321; *Williston on Contracts*, sec. 345, pp. 667, 668.

2. There remain to be briefly considered the alleged misjoinder of the three trustees as parties plaintiff and of the two plaintiffs, White and Zirckel. The trustees are bound to enforce the trust, and properly to charge, apply, or credit the funds which have come into their hands in the course of their administration of the trust and to render an account thereof, and to be indemnified for any deficit produced in consequence of their trust funds being insufficient to meet authorized expenditures and liabilities. In addition, the covenant of every one of the defendants found in paragraph 5 of the contract and declaration of trust was with the trustees and the other obligors. The trustees were unquestionably proper parties plaintiff. And so were Zirckel and White, who were two of the eight associates. No complete adjustment and settlement of the affairs of the syndicate could be made, if the two were not brought in as parties. The whole controversy should be heard and determined and concluded by decree, and the inclusion of these parties was necessary for this purpose. *Supra; Miller's Equity*, secs. 42, 43.

304

The opinion is based upon the admission by the demurrer of the facts alleged in the bill of complaint, and the defendants will have an opportunity in their answers to admit or deny them, and the controversy will, of course, be determined on the pleadings and the facts proved by the evidence of the parties without reference to the facts admitted by the demurrer on this appeal.

*Decree affirmed, with costs to the appellees, and cause remanded for further proceedings.*