DeBOY *v.* HARRIS et al.
[No. 141, October Term, 1954.]

*Decided May 13, 1955.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Norman P. Ramsey,* with whom was *Charles E. Hogg* on the brief, for appellant.

*John O. Herrmann,* with whom was *Jacob S. New* on the brief, for appelles.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs entered in favor of the appellees, defendants, Alfred J. Harris and George W. Smith, and against the appellant, plaintiff, James J. DeBoy, upon the sustaining of a demurrer, without leave to amend, to an amended declaration filed by the appellant.

The amended declaration is in five counts and makes substantially the following allegations. The first count alleges that on or about March 10, 1948, James J. DeBoy entered into a joint adventure agreement with Alfred J. Harris and George W. Smith. The agreement provided in effect that they and each of them in considera-

tion of the participation of the other and the contribution by DeBoy of the sum of $1,400.00, by Harris of the sum of $2,600.00, and by Smith of the sum of $1,000.00, would associate themselves together as joint adventurers with the intention of acquiring sites for, and constructing industrial and warehouse facilities to be leased, sold for profit or otherwise dealt in and with. It was agreed by all the parties that DeBoy should at all times have a twenty-eight percentum interest in the joint venture or ventures undertaken, that Smith should at all times have a twenty percentum interest, and that Harris should at all times have a fifty-two percentum interest, so that the said parties would enjoy a fixed and unchanging percentage of ownership in the assets of the venture and the profits thereof, which would constitute an annuity to the joint adventurers after the completion of the erection and leasing of properties, as hereinafter set forth. It was a part of said agreement that, to carry out the intention of the parties, the said joint adventurers would cause a corporation to be formed under the laws of Maryland to be known as The DeBoy Smith Construction Company. This corporation should have an authorized capital of $100,000.00 and should be an instrument or tool of the joint adventurers; that the respective interests of the joint adventurers, in the agreed percentages heretofore set out, should be permanently fixed and established by the issuance of shares of capital stock of said corporation to be formed; that the joint adventurers would build or cause to be built structures in the name of the corporation; that the corporation would negotiate with prospective lessees of such structures for the erection of such facilities and the leasing thereof upon completion, for periods of time and at rentals adequate to insure that construction loans covering the cost thereof could be procured from lending agencies; that the joint adventurers would at all times share in the joint adventure and the ownership and profits of the corporation, which was a creature or instrument of the joint adventure according to the agreed fixed percentages of ownership as aforesaid; and, that

they, and each of them, would undertake to devote their full time, energy and skill to said ventures and would, as officers of the corporate instrumentality of the joint venture, accept the sum of $100.00 per week as salary until all buildings to be constructed, were completed and leased as aforesaid.

The named individuals entered upon the performance of the said joint adventure agreement and on or about March 10, 1948, the proposed corporation was formed. In the charter of said corporation it was provided in accordance with said agreement that the capital stock be issued to said joint adventurers in the following amounts. (a) Fourteen shares, twenty-eight percentum of all shares, issued to DeBoy, (b) Ten shares, twenty percentum of all shares, issued to Smith, (c) Twenty-six shares, fifty-two percentum of all shares, issued to Harris, all of said stock to be issued at the par value of $100.00 per share for cash. As provided for in said charter, pursuant to said agreement, said stock was issued as above set forth and DeBoy paid the sum of $1,400.00, Smith paid the sum of $1,000.00, and Harris paid the sum of $2,600.00.

Pursuant to said agreement they constructed by joint adventure, in said corporate name, during the period from March 10, 1948, to May, 1950, in Baltimore a coffee warehouse and three industrial buildings, and in Hartford, Connecticut, a warehouse, at the total cost of $1,135,747.02 for the land, buildings and equipment. During the aforesaid period the said named persons devoted their full time, energy and skill to the acquisition, erection, and completion of said buildings and other corporate affairs of said corporation in accordance with said agreement and, except as hereinafter set forth, salaries were paid to said named individuals as officers in accordance with said agreement. In wilful disregard of the joint adventure agreement and in violation of DeBoy's rights thereof, the defendants, Harris and Smith, on or about April 15, 1952, breached the said joint adventure agreement in the following manner. Harris and Smith purported to act in their capacity as directors of the

corporation which was an instrumentality of the joint adventure, to cause a resolution to be passed by the board of directors of the corporation recommending to the stockholders an amendment of the corporate charter to increase the capital stock of the corporation. Said act constituted a wrongful and wilful breach and abandonment of the aforesaid agreement, in that it was designed and intended to cause and compel DeBoy to abandon his interest in the joint adventure, to sacrifice such interest for a nominal sum, and to destroy DeBoy's rights under the agreement aforesaid to participate in the ownership of the assets and profits of the joint adventure, held in the name of the corporation.

As a result of the breach of the agreement hereinbefore set out, DeBoy has suffered and will continue to suffer large losses by reason of the acts of the defendants. DeBoy has been deprived of his rights to receive profits and to participate in the assets to the extent provided in the agreement, and has suffered other losses, all as a direct result of the breaching of the agreement by the defendants, wherefore a right of action has accrued to him against the defendants to recover in respect of said damages.

The second count of the declaration further recites that over the protest of DeBoy at a special stockholders meeting held on April 30, 1952, the defendants purported to approve the proposed charter amendment to increase the capital stock of the corporation in violation of the joint adventure agreement. Said act constituted a wrongful and wilful breach and abandonment of the aforesaid agreement because it was designed and intended to compel DeBoy to abandon his interest in the joint adventure and to sacrifice such interest for a nominal sum. As a result of the breach of said agreement, DeBoy has suffered and will continue to suffer large losses, has been deprived of his rights to receive profits and to participate in the assets as agreed, wherefore a right of action has accrued to him against the defendants to recover damages.

The third count further alleges that the defendants on October 27, 1952, breached the said joint adventure

agreement by causing a resolution to be passed to authorize subscriptions for 3,950 shares of newly authorized stock of the corporation at $100.00 per share, which placed DeBoy in such a position that he would be unable to maintain his proportionate percentage in the joint adventure and caused him to abandon and sacrifice his interest for a nominal sum. He is therefore entitled to damages.

The fourth count further alleges that the defendants on or about January 7, 1953, breached the agreement by causing 2,204 shares of the newly authorized capital stock of the corporation to be issued to Harris or his nominees for its par value. Such action was intended to cause the destruction of DeBoy's interest in the joint adventure, in that he would be unable to maintain his proportionate percentage. As a result of this breach DeBoy has been deprived of his right to receive the profits to the extent provided in the agreement and has suffered other losses for which he is entitled to damages.

The fifth count, which is in effect a combination of the first four counts, alleges the breach of the joint adventure agreement by Harris and Smith, who undertook a course of conduct designed to "water down" DeBoy's proportionate share in the joint adventure by performing the following acts. On or about April 7, 1952, they removed DeBoy as an officer and director of the corporation. On or about April 15, 1952, the defendants recommended to the stockholders an amendment to the corporate charter increasing the capital stock as aforesaid. On April 30, 1952, such change in the charter was approved by the defendants. On or about October 27, 1952, the defendants, as directors, authorized the subscription for 3,950 shares of the newly authorized stock at its par value. On or about January 27, 1953, the defendants caused 2,204 shares of the newly authorized capital stock to be issued to Harris or his nominees at par value. This course of conduct on the part of the defendants was designed and intended to destroy DeBoy's interest in the joint adventure by offering such a large number of shares that he would not be able to maintain

his proportionate percentage in the joint adventure. By "watering down" his interest he is entitled to recover from the defendants damages for every one of said breaches specifically set out in the said five counts of the declaration.

It is admitted for the purposes of this case that the alleged agreement was oral and that the appellant was given an opportunity to subscribe to the newly issued stock of the corporation. Technically, of course, a demurrer is an admission of the truth of such matters of fact alleged in the opposite pleading, which are well pleaded. *Poe on Pleading*, (Tiffany's Ed.), Section 705.

Whether such an agreement as that here alleged survives after incorporation has not been before decided in this State. The leading case holding that such an agreement does not so survive is that of *Jackson v. Hooper*, (1910), 76 N. J. E. 592, 75 A. 568, 571. There, as here, a stockholder in a corporation made a complaint in equity, similar to that of the appellant here, against another stockholder in the same corporation. It was there held that as a matter of public policy the parties to such an agreement could not be partners *inter sese* and a corporation as to the rest of the world. The New York Courts seem to have taken the same view as that taken in *Jackson v. Hooper, supra*. See *Boag v. Thompson*, 208 App. Div. 132, 203 N. Y. S. 395; *Berger v. Eichler*, (1924), 211 App. Div. 479, 207 N. Y. S. 147; *Cohen v. Mahoney*, (1936), 160 Misc. 196, 289 N. Y. S. 802; *Epstein v. Leibner*, (1940), 258 App. Div. 1073, 18 N. Y. S. 2d 11; *Hennessy v. During*, (1953), 124 N. Y. S. 2d 266; *Manacher v. Central Coal Co.*, (1954), 284 App. Div. 380, 131 N. Y. S. 2d 671. Apparently the only case which reached the Court of Appeals of New York was that of *Manacher v. Central Coal Co., supra*, which was there affirmed on a procedural point in 308 N. Y. 784, 125 N. E. 2d 431. Compare *In Re Flanagan's Estate*, 298 N. Y. 787, 83 N. E. 2d 473. On the ground of public policy, the cases of *Seitz v. Michel*, (1921), 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060; and *Sun River Stock &*

*Land Co. v. Montana Trust & Savings Bank,* (1928), 81 Mont. 222, 262 P. 1039, follow *Jackson v. Hooper, supra.*

In *Wabash Ry. Co. v. Am. Refrigerator Transit Co.,* (1925), C. C. A. 8th Cir., 7 F. 2d 325, cert. denied, 270 U. S. 643, (1926), it was said: "The courts will look through the form to get at the real intent of the association of individuals or corporations forming the organization, and, if rights of third parties have not intervened, will give effect to the real purpose of the organization in order to promote square dealing and effectuate justice." In *Eisner v. Macomber,* (1920), 252 U. S. 189, 64 L. Ed. 521, the Supreme Court, in holding that a stock dividend is not taxable income to the shareholder recipients, based its decision upon the power and duty of the court to look through the corporate form. In *Mendelsohn v. Leather Manuf. Corp.,* (1950), 326 Mass. 226, 93 N. E. 2d 537, it was held that the association of the parties constituted a joint adventure and that, although later the parties sought to carry out their purposes through the medium of a corporation, it did not change the essential nature of the relationship. In *E. K. Buck Stores v. Harkert,* (1954), 157 Neb. 867, 62 N. W. 2d 288, it was held that stockholders' control agreements are valid where it is for the benefit of the corporation, works no fraud upon creditors or other stockholders, and violates no statute or recognized public policy. In *Latimer v. Piper,* (1933), 261 Mich. 123, 246 N. W. 65, it was held that the association of the parties constituted a joint adventure, and that the corporation was merely a medium for carrying out the joint venture, and incorporation did not prevent recovery from an associate as a joint adventurer. In *Hathaway v. Porter Realty Co.,* (1941), 296 Mich. 90, 733, 295 N. W. 571, 299 N. W. 451, 138 A. L. R. 955, it was held that the character of an oil royalty pool organized as a joint adventure was not changed by its later incorporation, where the corporate form was used merely as a convenient medium to carry out the intention of the parties. Likewise, in *Elsbach v. Mulligan,* (1943), 58

Cal. App. 354, 136 P. 2d 651, 654, it was held that, if a corporation is a mere agency for convenience in carrying out the joint venture agreement and independent and innocent third parties, such as creditors or stockholders, are not injured thereby, for the purpose of determining the rights of the parties, such parties will be placed in the position which each occupied under the original agreement. In *Donahue v. Davis,* (1953), S. Ct. Fla., 68 So. 2d 163, it was held that because joint adventurers determined to carry out the purpose of their agreement through the medium .of a corporation, such incorporation does not change the essential nature of their relationship. In *Beardsley v. Beardsley,* (1891), 138 U. S. 262, 34 L. Ed. 928, the Supreme Court held that, although the relationship of the plaintiff and the defendant to a railroad corporation was evidenced by stock certifiicates, yet it could be found by other testimony that the relationship between them was not that of mere stockholders in the corporation but that of joint owners in a common enterprise for the construction of the road, the profits and losses of which were to be shared between them. The Court there said: "Suppose Alderman had not sold, can it be doubted that equity would regard them as jointly the owners of this property, although their ownership was evidence by separate shares of stock? Would equity tolerate any transaction by which appellant, securing the influence of a few shares of stock held by the nominal directors, should obtain bonds or contracts by which the value of the stock would be substantially destroyed, and he become the real owner?" As the allegations in the declaration before us are that the corporation was to be used merely as a medium to carry out the purposes of the agreement; we are of opinion that under the allegations herein the incorporation did not wipe out the agreement.

The action here is one for damages for breach of contract. It is admitted by the appellant here that partners cannot sue one another at law. Under Code, 1951, Article 73A, Section 6, a partnership is defined as "an asso-

ciation of two or more persons to carry on as co-owners a business for profit." However, appellant contends that joint adventurers can so litigate. In *Brudvik v. Frosaker Blaisdell Co.*, (1927), 56 N. D. 215, 216 N. W. 891, 893, P entered into a contract with B and others whereby the latter were to pay for cars supplied to P by F. The cars were then to be resold by P and commissions divided. B and the others sued F for proceeds of resale contracts made by P. The Court there said: "Actions at law may be maintained by one party to a joint adventure against another for breach of a contract, or for a share of the profits or losses, or to recover a contribution for advances made (see 15 R. C. L. 507)— matters which ordinarily require adjustment as between true partners through a suit in equity." For cases substantially in accord see *Keys v. Nims*, 43 Cal. App. 1, 184 P. 695, 699; *San Francisco Iron & Metal Co. v. American M. & I. Co.*, 115 Cal. App. 238, 1 P. 2d 1008, 1012; *Paganucci v. Kalpouzos*, 78 Cal. App. 2d 714, 178 P. 2d 62. In *Miller v. Walser*, 42 Nev. 497, 181 P. 437, it was held that one member to a contract of joint adventure may sue the other at law for breach of contract, or he may sue in equity for an accounting. In *Champion v. D'Yarmett*, (1927), Tex. Civ. App., 293 S. W. 587, 588, two parties contracted to drill a test well for oil and gas, each to be liable for one-half of the expenses and to share the profits equally. One party breached the contract. The Court, in allowing the other joint adventurer to recover, said: "A joint adventurer who has been injured by a breach of the contract by his co-adventurer, or by the default of his co-adventurer in not paying his part of the expenses, may bring an action at law to redress his grievances, and may in such action recover the damages which he has suffered, or the expenses incurred by him in proportion to the interest of the parties, without the necessity of an accounting as between the joint adventurers." There, the amount of damages was easily ascertainable. In *Julian Petroleum Corp. v. Courtney Petroleum Co.*, (1927), C. C. A. 9, 22 F. 2d 360, 363,

suit was brought by one joint adventurer against another for damages for failure to abide by an agreement to drill an oil well. The determination of damages seem to be fairly complicated. The Court there said: "If it be conceded that the written agreement shows a joint adventure, it is well settled that one joint adventurer may sue another at law." For other cases holding that a joint adventurer may sue the other joint adventurer at law for breach of contract see *Chapman v. Dwyer,* (1930), C. C. A. 2d, 40 F. 2d 468; *Hoffman v. Louis L. Battey Post #4,* 74 Ga. App. 403, 39 S. E. 2d 889; *Newby v. Atl. Coast Realty Co., et al,* 182 N. C. 34, 108 S. E. 323. The case of *Hey v. Duncan,* (1926), C. C. A. 7, 13 F. 2d 794, involved a joint adventure. The Court there said: "A defrauded member may rescind the agreement and recover as damages the money contributed by him, or he may sue in equity for an accounting, but he is not bound to do either; he may sue for damages for the deceit." It is said in 48 *C. J. S.,* Joint Adventures, page 847, Section 12b: "A joint adventure is sometimes so free from complexity that its affairs can be settled in an action at law, and courts of law are somewhat more inclined to entertain controversies between joint adventurers than controversies between partners."

In *Hambleton v. Rhind,* 84 Md. 456, 36 A. 597, it was held that a syndicate formed to carry out some particular business transaction of a financial character was as respects the persons composing it a partnership. Jurisdiction there was in equity. In *Cuth v. Elliott,* 158 Md. 243, 148 A. 216, where a syndicate was formed to distribute certain corporate stock, although not designated as a joint adventure, the action for a share in the profits was one at law. The case of *Redue v. Hofferbert,* (1931), 161 Md. 296, 157 A. 294, decided after the enactment of Chapter 447, Acts of 1888, now Code, 1951, Article 26, Section 9, giving jurisdiction in law upon bills for account, involved a syndicate of eight members which was formed to purchase certain shares of stock for the opening of a bank which had been incorporated. The pur-

chase there was undertaken as a joint adventure. Suit was brought against some members of the syndicate by other members for failure to pay for shares allotted to them. A demurrer was filed to the bill of complaint, one of the grounds being that the admitted facts constituted merely a breach of contract on the part of the defendants for which the plaintiffs had a full and complete remedy at law. It was held in that case that the association which the members formed was a joint undertaking for their common benefit. The Court there said: "The situation, therefore, was not where an action lay for the undisputed balance of an account or as a result of an account stated, nor could the plaintiffs bring an action at law on the theory of contribution, because the plaintiffs had not made any payment as sureties of a debt of the defendants nor as jointly liable with them *ex contractu.* * * * There are other circumstances which increase the complexities and difficulty of a certain and conclusive finding of the relative rights and liabilities of the associates *inter sese.* * * * The adjudication of these and other inter-locking and interdependent issues of law and of fact is not possible in a single action at law, and a court of chancery is the only jurisdiction with principles appropriately animated and controlled by equitable considerations, and with procedure adequately adaptable and comprehensive to administer justice and decree full and final relief among all the parties combined in a single suit. So it may be affirmed with confidence that the rights and liabilities of the parties to this appeal are properly cognizable in equity." In *Berg v. Plitt,* 178 Md. 155, 12 A. 2d 609, although the parties were not designated as joint adventurers, the action by some of the parties against the others, to recover the amount paid by them in purchase of property, was at law. In *Hobdey v. Wilkinson,* 201 Md. 517, 94 A. 2d 625, Wilkinson and wife and one Murdock, a licensed real estate broker, entered into an agreement to engage in a real estate development in which the three were to share equally in the profits and losses. The

Wilkinsons were to supply the capital for the adventure. Murdock was to supervise the purchase of lots and act as general contractor for the construction of houses. It was held in that case that this relationship constituted a joint adventure. Jurisdiction there was in equity. It was said in *Baker v. Standard Lime & Stone Co.*, 203 Md. 270, 283, 100 A. 2d 822: "We may assume that if the plan were shown to be illegal, *ultra vires* or fraudulent, it might be set aside by a court of equity. *Shaw v. Davis*, 78 Md. 308, 316. We may also assume that an equity court may set aside a transaction whereby majority stockholders use their voting power for their own benefit, for some ulterior purpose adverse to the interests of the corporation and its stockholders as such. *Cooperative Milk Service v. Hepner*, 198 Md. 104, 114, 81 A. 2d 219, 224."

Here, from the allegations of the declaration, the duration, size and financial operations under the alleged agreement appear complicated and involved. The alleged agreement resulted in the construction and lease of five large properties at four different locations in Baltimore City and one in Hartford, Connecticut, at a cost of $1,135,-747.02. To settle the rights of the parties it appears that the accounting will be involved and complicated. This is not a suit for some undisputed balance or liquidated amount. The appellant alleges that he sustained "large losses" and "deprivation of profits." Whether the agreement constituted a partnership or a joint venture, we are of opinion that the demurrer should have been overruled, and the case transferred to the equity court for an accounting, if the proof sustains the allegations of the bill. Code, 1951, Article 75, Section 125; *Commonwealth of Pa. v. Warren*, 204 Md. 467, 475, 105 A. 2d 488.

*Judgment reversed, with costs, and case remanded for further proceedings as herein indicated.*