HERRING ET AL. *v.* OFFUTT

[No. 2, September Term, 1972.]

*Decided November 1, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and PLUMMER M. SHEARIN, Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Peter F. O'Malley*, with whom were *Kahler, Shipley & O'Malley, Haislip & Yewell* and *Thomas B. Yewell* on the brief, for appellants.

*Thomas A. Farrington*, with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

SHEARIN, J., delivered the opinion of the Court.

By written agreement dated June 4, 1963, Lyle E. Dewees, Oscar R. Duley and two others became "partners" in a business called the "Spencer Joint Venture", for the purpose of owning and developing 14.6332 acres of land in Prince George's County. Dewees and James F. Herring owned a restaurant business located on the property. On December 22, 1963, Duley died owning a 25% interest in the venture. Thereafter, Dewees and Herring sought a purchaser for the Duley interest and found one in the person of Worth Offutt. Offutt was led to believe that 24.5% of the venture could be purchased from Duley's estate for $25,000, whereupon he offered to participate to the extent of $10,000. The bargain of

the parties was reduced to writing under date of April 29, 1964. Dewees and Herring then arranged to purchase the Duley interest (by agreement dated May 6, 1964) for a total consideration of $14,000, transferred 10% of the venture to Offutt for $10,000, and thereby realized a substantial profit which was not disclosed to the new "partner". Five years later, during the course of other litigation, Offutt first learned the true facts of the matter. He then sued Dewees and Herring at law for fraud. Upon trial, without a jury, the lower court entered judgment in his favor for both compensatory and punitive damages.

The matter is before us on appeal from that judgment.

## I

The basic issue raised here is whether a fiduciary relationship existed between the parties at the time the alleged false and fraudulent misrepresentations were made to appellee.

Appellants contend, in substance, that, during the negotiations which produced the written agreement of April 29, 1964, the parties were dealing at arm's length for the purchase and re-sale of an interest in real property. Thus, they disclaim any duty on their part as sellers to disclose the price paid, or to be paid, by them and invoke the ancient principle of *caveat emptor.*

It is conceded that the arrangement was ultimately consummated but appellants apparently contend that it did not occur until after conclusion of the transaction with the Duley estate, the formal assignment of appellee's 10% interest to him and the execution by the parties of a "Declaration of Ownership" (on June 24, 1964).

While we deem it unnecessary to decide precisely when the joint venture (if, indeed it was a joint adventure, *Madison Nat'l Bank v. Newrath,* 261 Md. 321, 237, 275 A. 2d 495, 498 (1971) ; *Atlas Realty Co. v. Galt,* 153 Md. 586, 590, 139 A. 285, 286 (1927)) came into being, it is

noteworthy that, in the parties' first written agreement (dated April 29, 1964), paragraph 2 stated:

"The parties hereto recognize and incorporate herein by reference an Agreement dated June 4, 1963 signed by Dewees, Oscar R. Duley, T. D. Burgess and Frank G. Principe (hereinafter referred to as Spencer Joint Venture Agreement) which Agreement set forth the performance of the parties involved in the Spencer Venture. It is understood that this Agreement is being made pursuant to provisions of paragraph 9 (b) of the Spencer Joint Venture Agreement."

Paragraph 6 of the Agreement also stated that:

"Dewees agrees with Offutt and Herring that, should the the [sic] conditions precedent to this contract occur, that he will recognize Offutt and Herring as having full rights as Joint Venturers under the Spencer Venture contract. All of the parties to this contract specifically recognize and adopt paragraph 9 (d) of the Spencer Venture Agreement and agree by this contract to be bound by all the provisions of the Spencer Joint Venture Agreement. The parties hereto agree that Offutt and Herring are to share fully the rights and obligations of that contract to the extent of their respective interests."

It is not disputed that, when formed, the venture was, as respects the parties composing it, a partnership, and the legal obligations assumed by the participants were, as between themselves, substantially the same as those which the law imposes on the members of an ordinary copartnership. See *Powers v. State,* 178 Md. 23, 11 A. 2d 909 (1940) ; *Redue v. Hofferbert,* 161 Md. 296, 157 A. 294 (1931) ; and *Hambleton v. Rhind,* 84 Md. 456, 36 A. 597 (1896) and 86 Md. 305, 38 A. 40 (1897). A joint venture has been defined as, "An association of two or

more persons to carry out a single business enterprise for profit," and as "a partnership for a single transaction." *"Joint Adventures"*, 8 Md. L. Rev. 22 (1943). Cf. *Berg v. Plitt*, 178 Md. 155, 12 A. 2d 609 (1940). The partnership relationship is of a fiduciary character which carries with it the requirement of utmost good faith and loyalty and the obligation of each member of the partnership to make full disclosure of all known information that is significant and material to the affairs or property of the partnership. *Allen v. Steinberg*, 244 Md. 119, 128, 223 A. 2d 240 (1965); *Hambleton v. Rhind, supra;* and cases cited in the notes to 17 M.L.E. *Partnership* § 71; *"Joint Adventures"*, 8 Md. L. Rev., *supra,* at 22. The severity with which adherence to this obligation is demanded by the courts was aptly expressed by Mr. Justice Cardozo, then Chief Judge of the New York Court of Appeals in *Meinhard v. Salmon*, 249 N. Y. 458, 164 N. E. 545, 62 A.L.R. 1 (1928):

> "Many forms of conduct permissible in a workday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

Moreover, "the principle of utmost good faith covers not only dealings and transactions occurring during the partnership but also those taking place during the negotiations leading to the formation of the partnership." *Allen v. Steinberg, supra,* at 128. See also *The Uniform*

*Partnership Act,* Maryland Code (1957, 1970 Repl. Vol.), Art. 73A, Sec. 21, which provides, in pertinent part:

> "21. *Partner accountable as a fiduciary.*
>
> (1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from *any transaction connected with the formation,* conduct, or liquidation *of the partnership* or from any use by him of its property." (Emphasis added.)

The record in this case leaves no room for doubt that, from the earliest stages of the negotiations between the parties, the ultimate aim and goal thereof was the formation of a joint venture (partnership), *not* the purchase and sale of an interest in land, as such.

Accordingly, we find no error in the trial court's holding as to the existence, and violation of, a fiduciary duty on the part of appellants to disclose and account to appellee for their secret profits.

## II

The second issue presented by this appeal is whether the trial court erred in refusing to grant appellants' motion to dismiss, at the close of appellee's case, on the ground that the action was barred by the Statute of Limitations.

It is not disputed that Code (1957, 1972 Repl. Vol.), Art. 57, Sec. 1, requires that actions of this nature be brought within three years from the time the cause of action accrued. In this case the fraud was committed in 1964, discovered by appellee in 1969, and suit was brought within one year thereafter, namely, on July 15, 1970. The dispute arises, therefore, with respect to the applicability of Art. 57, Sec. 14, which provides that:

> "In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to

bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

Section 14 was a remedial statute enacted by the General Assembly, in 1868, for the purpose of enabling the plaintiff in an action at law to set up the fraud of the defendant in order to avoid a plea of limitations. *Piper v. Jenkins,* 207 Md. 308, 113 A. 2d 919 (1955).

Whether a plaintiff's failure to discover his cause of action was due to his lack of diligence, or to defendant's concealment of his wrong, is ordinarily a question for the trier of fact. *New England Mutual Life Ins. Co. v. Swain,* 100 Md. 558, 60 A. 469 (1905). Cf. *Wilson v. Le-Moyne,* 204 F. 726 (4th Cir., 1913).

We have repeatedly held that where the question is so put, we will disturb the finding only when clearly erroneous.

It was contended below and here that Offutt could have readily discovered the fraud practised upon him if he had taken the trouble to examine the records of the Orphans' Court for Prince George's County concerning the Duley estate. In dealing with this contention, Judge Bowen observed:

"In this case, the Court is not satisfied the examination of the Orphans' Court Records would have disclosed fraud, because the consideration moving to the estate of Oscar R. Duley exceeded the four thousand dollars shown in the Orphans' Court Records by ten thousand dollars.

"Accordingly, examination of those records would not have disclosed the true statement of affairs and no where in the papers that the Court is made to believe to be the true statement of affairs ever appear to be disclosed, as the Court understands them at this point.

"Accordingly, we decline to apply the Statute of Limitations in this case.

*  *  *

". . . there is nothing to require a man to keep going back and keep checking on the deal, if it was readily available to him to find out when the deal was consummated, that is one thing; having consummated the deal, he is in it and I don't think he is required to distrust his partners to such an extent that he must check to see if they cheated him by checking some obscure record in the Orphans' Court which in this case I am bound to say, I don't understand yet."

Appellee contends, with substantial logic, that, to require one partner not only to be suspicious of his fellow partners but to ferret out every possibility that clandestine frauds have been worked upon him, would amount to the substitution of a standard of *extraordinary* diligence for the statutory standard of *"usual* or *ordinary* diligence."

"Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused. In such a case, so long as the relationship continues unrepudiated, there is nothing to put the injured party on inquiry, and he cannot be said to have failed to use due diligence in detecting the fraud. [*Lataillade v. Orena,* 91 Cal. 565, 27 P. 924; *Crawford v. Crawford,* 134 Ga. 114, 67 S. E. 673; *Gillett v. Wiley,* 126 Ill. 310, 19 N. E. 287; *Vail v. Vail,* 233 N. C. 109, 63 S.E.2d 202; *Small v. Dorsett,* 223 N. C. 754, 28 S.E.2d 514.] This is for the reason that a confidential relationship by its nature gives the confiding party the right to relax his vigilance to a certain extent and rely on the good faith of the other party and his duty to disclose all material facts, and

therefore the confiding party has no duty to make inquiries until something occurs to make him suspicious. [*Vail v. Vail,* 233 N. C. 109, 63 S.E.2d 202.]

\* \* \*

Similarly, an agent sued for fraud cannot set up that the principal should have suspected him. [*Kilbourn v. Sutherland,* 130 U. S. 505, 32 L. Ed. 1005, 9 S. Ct. 594; other citations omitted]." 37 Am. Jur. 2d 555.

See also *Heap v. Heap,* 258 Mich. 250, 242 N. W. 252 (1932), which recognized the general rule that the running of the Statute of Limitations will not be postponed if the defrauded person may discover the fraud from the public records but stated that such rule does not apply to a person while a fiduciary relationship exists and where nothing occurred to indicate the necessity for investigation.

In the circumstances of this case, Judge Bowen's factual findings were not clearly erroneous. Accordingly, we shall affirm.

*Judgment affirmed, the appellants to pay the costs.*